## HOSPITAL BUILDING CO. *v.* TRUSTEES OF REX HOSPITAL ET AL.

No. 74–1452.   Argued February 25, 1976—Decided May 24, 1976

MARSHALL, J., delivered the opinion for a unanimous Court.

*John K. Train III* argued the cause for petitioner. With him on the brief were *Timothy S. Perry* and *John R. Jordan, Jr.*

*Ray S. Bolze* argued the cause for respondents. With him on the brief were *John H. Anderson* and *Lillard Mount.* *

MR. JUSTICE MARSHALL delivered the opinion of the Court.

This is a suit brought under §§ 1 and 2 of the Sherman Act, 26 Stat. 209, as amended, 15 U. S. C. §§ 1–2. Petitioner has alleged that respondents are engaged in an unlawful conspiracy to restrain trade and commerce in the furnishing of medical and surgical hospital services, and that they are attempting to monopolize the hospital business in the Raleigh, N. C., metropolitan area. The District Court dismissed petitioner's amended complaint on the pleadings, finding that petitioner had not alleged a sufficient nexus between the alleged violations of the Sherman Act and interstate commerce. The Court of Appeals for the Fourth Circuit, sitting en banc, affirmed the judgment of the District Court, holding that the provision of hospital services is only a "local" activity, 511 F. 2d 678, 682 (1975), and that the amended complaint did not adequately allege a "substantial effect" *id.,* at 684, on interstate commerce. We granted certiorari, 423 U. S. 820 (1975), and now reverse. We hold that the amended complaint, fairly

*Briefs of *amici curiae* urging reversal were filed by *Solicitor General Bork, Assistant Attorney General Kauper, Barry Grossman, Robert B. Nicholson,* and *John J. Powers III* for the United States; and by *Carl Weissburg* and *Lyle R. Mink* for the Federation of American Hospitals.

read, adequately alleges a restraint of trade substantially affecting interstate commerce and that dismissal on the pleadings of petitioner's amended complaint was therefore inappropriate.

## I

## A

Since we are reviewing a dismissal on the pleadings, we must, of course, take as true the material facts alleged in petitioner's amended complaint. See, e. g., *Mandeville Island Farms, Inc.* v. *American Crystal Sugar Co.,* 334 U. S. 219, 222 (1948). Petitioner is a corporation organized for profit under the laws of North Carolina. It operates the Mary Elizabeth Hospital, a 49-bed proprietary hospital in Raleigh, N. C., which offers a general range of medical and surgical services to the public. Respondent Trustees of Rex Hospital (Rex) is a North Carolina corporation which operates Rex Hospital, a private, tax-exempt hospital also located in Raleigh. The other three respondents are the administrator of Rex, one of its individual trustees, and the executive secretary of the local agency responsible for making recommendations to state officials concerning the Raleigh community's need for additional hospital beds. The amended complaint alleges that respondents, along with several co-conspirators not named as defendants in this action, have acted in concert to block the planned relocation of Mary Elizabeth Hospital within the city of Raleigh and its expansion from 49 beds to 140 beds. According to the amended complaint, respondents and their co-conspirators orchestrated a plan to delay and, if possible, prevent the issuance of the state authorization that was a necessary prerequisite to the expansion of Mary Elizabeth. After a delay of some months, the authorization was finally granted, but since then, it is alleged, respondents and

their co-conspirators have employed a series of bad-faith tactics, including the bringing of frivolous litigation, to block the implementation of the expansion. The amended complaint also alleges that respondents have maliciously instigated the publication of adverse information about petitioner's expansion plan in order to block the expansion. All these actions, it is contended, have been taken as part of an attempt by Rex to monopolize the business of providing compensated medical and surgical services in the Raleigh area.

Petitioner identifies several areas of interstate commerce in which it is involved. According to the amended complaint, petitioner purchases a substantial proportion—up to 80%—of its medicines and supplies from out-of-state sellers. In 1972, it spent $112,-000 on these items. A substantial number of the patients at Mary Elizabeth Hospital, it is alleged, come from out of State. Moreover, petitioner claims that a large proportion of its revenue comes from insurance companies outside of North Carolina or from the Federal Government through the Medicaid and Medicare programs. Petitioner also pays a management service fee based on its gross receipts to its parent company, a Delaware corporation based in Georgia. Finally, petitioner has developed plans to finance a large part of the planned $4 million expansion through out-of-state lenders. All these involvements with interstate commerce, the amended complaint claims, have been and are continuing to be adversely affected by respondents' anticompetitive conduct.

## B

Respondents' motion to dismiss asserted both that the District Court had no jurisdiction over the subject matter of the amended complaint, Fed. Rule Civ. Proc. 12 (b)(1), and that the amended complaint failed to

state a claim upon which relief could be granted. Rule 12 (b)(6). Critical to respondents' motion was their contention that the amended complaint failed "to allege facts sufficient to state the requisite effect upon interstate commerce as required under the Sherman Act." App. 32. The District Court granted the motion to dismiss, concluding that the provision of hospital and medical services "is strictly a local, intra-state business," Pet. for Cert., App. D-3, and that "the conduct of the defendants complained of in this case directly affects only a local activity of the plaintiff, and only incidentally and insubstantially does it affect interstate commerce." *Id.*, at D-3—D-4.

A three-judge division of the Court of Appeals for the Fourth Circuit affirmed the ruling of the District Court. Thereupon, petitioner filed a motion for rehearing en banc, which was granted, and the division opinion was withdrawn. On rehearing en banc, the ruling of the District Court was again affirmed. 511 F. 2d 678 (1975). While the Court of Appeals perceived some ambiguity as to whether the District Court decision was grounded on Rule 12 (b)(1) or Rule 12 (b)(6), it treated the decision as holding that under Rule 12 (b)(6) petitioner had failed to state a claim upon which relief could be granted.[1] The court then held that the allegations in the amended complaint, even if true, were inadequate to support a conclusion that the alleged anticompetitive conduct was occurring in interstate commerce, or that it had or would have a substantial effect on interstate commerce.

---

[1] We, too, will treat the dismissal as having been based on Rule 12 (b)(6). However, our analysis in this case would be no different if we were to regard the District Court's action as having been a dismissal for want of subject-matter jurisdiction under Rule 12 (b)(1). In either event, the critical inquiry is into the adequacy of the nexus between respondents' conduct and interstate commerce that is alleged in the complaint.

## II

The Sherman Act prohibits every contract, combination, or conspiracy "in restraint of trade or commerce among the several States," 15 U. S. C. § 1, and also prohibits monopolizing "any part of the trade or commerce among the several States." 15 U. S. C. § 2. It is settled that the Act encompasses far more than restraints on trade that are motivated by a desire to limit interstate commerce or that have their sole impact on interstate commerce. "[W]holly local business restraints can produce the effects condemned by the Sherman Act." *United States* v. *Employing Plasterers Assn.*, 347 U. S. 186, 189 (1954). As long as the restraint in question "substantially and adversely affects interstate commerce," *Gulf Oil Corp.* v. *Copp Paving Co.*, 419 U. S. 186, 195 (1974); *Mandeville Island Farms, Inc.* v. *American Crystal Sugar Co.*, 334 U. S., at 234, the interstate commerce nexus required for Sherman Act coverage is established. " 'If it is interstate commerce that feels the pinch, it does not matter how local the operation which applies the squeeze.' " *Gulf Oil Corp.* v. *Copp Paving Co.*, *supra*, at 195, quoting *United States* v. *Women's Sportswear Assn.*, 336 U. S. 460, 464 (1949).[2]

In this case, the Court of Appeals, while recognizing

---

[2] When Congress passed the Sherman Act in 1890, it took a very narrow view of its power under the Commerce Clause. See, *e. g.*, H. R. Rep. No. 1707, 51st Cong., 1st Sess., 1 (1890); Slater, Antitrust and Government Action: A Formula for Narrowing *Parker* v. *Brown,* 69 Nw. U. L. Rev. 71, 84 (1974). Subsequent decisions by this Court have permitted the reach of the Sherman Act to expand along with expanding notions of congressional power. See *Gulf Oil Corp.* v. *Copp Paving Co.*, 419 U. S., at 201–202. Compare *United States* v. *E. C. Knight Co.*, 156 U. S. 1 (1895), with *Mandeville Island Farms, Inc.* v. *American Crystal Sugar Co.*, 334 U. S. 219 (1948), and *United States* v. *Employing Plasterers Assn.*, 347 U. S. 186 (1954).

that Sherman Act coverage requires only that the conduct complained of have a substantial effect on interstate commerce, concluded that the conduct at issue did not meet that standard. We disagree. The complaint, fairly read, alleges that if respondents and their co-conspirators were to succeed in blocking petitioner's planned expansion, petitioner's purchases of out-of-state medicines and supplies as well as its revenues from out-of-state insurance companies would be thousands and perhaps hundreds of thousands of dollars less than they would otherwise be. Similarly, the management fees that petitioner pays to its out-of-state parent corporation would be less if the expansion were blocked. Moreover, the multimillion-dollar financing for the expansion, a large portion of which would be from out of State, would simply not take place if the respondents succeeded in their alleged scheme. This combination of factors is certainly sufficient to establish a "substantial effect" on interstate commerce under the Act.

The Court of Appeals found two considerations crucial in its refusal to find that the complaint alleged a substantial effect on interstate commerce. The Court's reliance on neither was warranted. First, the Court observed: "The effect [on interstate commerce] here seems to us the indirect and fortuitous consequence of the restraint of the intrastate Raleigh area hospital market, rather than the result of activity purposely directed toward interstate commerce." 511 F. 2d, at 684 (footnote omitted). But the fact that an effect on interstate commerce might be termed "indirect" because the conduct producing it is not "purposely directed" toward interstate commerce does not lead to a conclusion that the conduct at issue is outside the scope of the Sherman Act. For instance, in *Burke* v. *Ford,* 389 U. S. 320 (1967), Oklahoma liquor retailers brought a Sherman Act action against liquor wholesalers in the State, alleging that the wholesalers

had restrained commerce by dividing up the state market into exclusive territories. While the market division was patently not "purposely directed" toward interstate commerce, we held that it nevertheless substantially affected interstate commerce because as a matter of practical economics[3] that division could be expected to reduce significantly the magnitude of purchases made by the wholesalers from out-of-state distillers. "The wholesalers' territorial division . . . almost surely resulted in fewer sales to retailers—hence fewer purchases from out-of-state distillers—than would have occurred had free competition prevailed among the wholesalers." *Id.*, at 322 (footnote omitted). Whether the wholesalers intended their restraint to affect interstate commerce was simply irrelevant to our holding. See also *United States v. McKesson & Robbins*, 351 U. S. 305 (1956). In the same way, the fact that respondents in the instant case may not have had the purposeful goal of affecting interstate commerce does not lead us to exempt that conduct from coverage under the Sherman Act.

The Court of Appeals further justified its holding of "no substantial effect" by arguing that "no source of supply or insurance company or lending institution can be expected to go under if Mary Elizabeth doesn't expand, and no market price likely will be affected." 511 F. 2d, at 684. While this may be true, it is not of great relevance to the issue of whether the "substantial effect" test is satisfied. An effect can be "substantial" under the Sherman Act even if its impact on interstate commerce falls far short of causing enterprises to fold or affecting market price. For instance in *United States v. Employing Plasterers Assn.*, *supra*, we considered a

---

[3] We have noted that "[i]t is in a practical sense that we must view an effect on interstate commerce." *Goldfarb* v. *Virginia State Bar*, 421 U. S. 773, 784 n. 11 (1975).

Sherman Act challenge to an alleged conspiracy between a trade association and union officials to restrain competition among Chicago plastering contractors. As in the instant case, the District Court dismissed the action on the pleadings. It did so on the ground that the complaint amounted to no more than charges of "local restraint and monopoly," 347 U. S., at 188, not reached by the Sherman Act. The United States appealed directly to this Court under § 2 of the Expediting Act, 32 Stat. 823, as amended, 15 U. S. C. § 29, and we reversed. It was sufficient for us that the allegations in the complaint, if proved, could show that the conspiracy resulted in *"unreasonable burdens on the free and uninterrupted flow* of plastering materials into Illinois." 347 U. S., at 189 (emphasis added). We did not demand allegations, either express or implied, that the conspiracy threaten the demise of out-of-state businesses or that the conspiracy affect market prices.[4] Thus, since in this case the allegations fairly claim that the alleged conspiracy, to the extent it is successful, will place "unreasonable burdens on the free and uninterrupted flow" of interstate commerce, they are wholly adequate to state a claim.

We have held that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley* v. *Gibson,* 355 U. S. 41, 45–46 (1957) (footnote omitted). And in antitrust cases, where "the proof is largely in the hands of the alleged conspirators," *Poller* v. *Columbia Broadcasting,* 368 U. S. 464, 473 (1962), dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly. Applying this concededly rigorous standard, we conclude that

---

[4] See also *Goldfarb* v. *Virginia State Bar, supra,* at 783–785.

the instant case is not one in which dismissal should have been granted. Petitioner's complaint states a claim upon which relief can be granted under the Sherman Act.[5] Accordingly, the judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*

---

[5] It may, of course, be that even though petitioner's complaint adequately alleges an effect on interstate commerce, further proceedings in this case will demonstrate that respondents' conduct in fact involves no violation of law, or indeed no substantial effect on interstate commerce. Cf. *United States* v. *Oregon Medical Soc.,* 343 U. S. 326 (1952).