**DOLLAR RENT A CAR SYSTEMS, INC., a corporation, Plaintiff,**

v.

**HERTZ CORPORATION, a corporation, Avis Rent A Car System, Inc., a corporation, National Car Rental System, Inc., a corporation, Defendants.**

**No. C–75–2650–CBR**

United States District Court, N. D. California.

July 8, 1977.

---

**514**

Law Offices of Joseph L. Alioto, Joseph L. Alioto, Joseph M. Alioto, Steven J. Cannata, San Francisco, Cal., Theodore F. Schwartz, Clayton (St. Louis), Mo., for plaintiff.

Morrison & Foerster, Robert D. Raven, San Francisco, Cal., Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for defendant The Hertz Corp.

Blecher, Collins & Hoecker, Maxwell M. Blecher, Daphne M. Stegman, Los Angeles, Cal., for defendant Avis Rent-A-Car System, Inc.

Pillsbury, Madison & Sutro, James J. Walsh, San Francisco, Cal., Gray, Plant, Mooty & Anderson, Daniel R. Shulman, Michael P. Sullivan, Minneapolis, Minn., for defendant National Car Rental System, Inc.

### ORDER DENYING MOTION TO DISMISS

RENFREW, District Judge.

This is an action brought under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 26, alleging that defendants have violated Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2. Plaintiff Dollar Rent A Car Systems, Inc., alleges that defendants The Hertz Corporation ("Hertz"), Avis Rent A Car System, Inc. ("Avis"), and National Car Rental System, Inc. ("National"), have conspired to monopolize and have monopolized the on-airport automobile rental market.[1]

1. Paragraphs 13 and 14 of the complaint charge:

"13. Beginning at a time unknown to the plaintiff and continuing at present up to the date of the filing of the Complaint, the defendants, individually and in combination with each other, and the co-conspirators, have unlawfully combined and conspired to unreasonably restrain and monopolize and individually and with specific intent attempted to monopolize and have monopolized the aforesaid trade and commerce, all in violation of Sections 1 and 2 of the Sherman Antitrust Act (15 U.S.C. § 1, 2).

"14. The aforesaid unlawful combinations, conspiracies and attempts to monopolize by the defendants, all undertaken with the predatory intent and purpose of eliminating competition, including the plaintiff, consisted in part of the following agreed upon practices:

A. To submit common bid specifications and contractual provisions for airport automobile rental concessions;

B. To establish contractual provisions and eligibility criteria in airport automobile rental concession contracts which have the effect of raising barriers to entry into and excluding competitors, including plaintiff, from on-airport auto rental markets;

C. To fix and stabilize prices for automobile rentals at rental service locations;

D. To enter into anti-competitive arrangements with Ford Motor Company, Chrysler Corporation, and General Motors Corporation for advertising subsidies which have the effect of increasing barriers to entry and maintaining and reinforcing the aforesaid non-competitive market structure;

E. To engage, individually and amongst themselves, in anti-competitive actions, including harassment, which prevents smaller competitors, including the plaintiff, from penetrating the on-airport auto rental markets;

F. To bribe agents and representative [sic] of airport commissions for the purpose and with the effect of excluding competitors, including the plaintiff;

G. To agree not to accept the credit cards of other rent-a-car competitors, including the plaintiff;

H. To oppose in bad faith the applications of competitors, including the plaintiff, to airport commissions;

I. To make misrepresentations in bad faith against competitors, including the plaintiff, in trade publications, to airport commissions, and to others;

J. To fix and stabilize prices for automobile rentals at on-airport auto rental markets,

On February 23, 1977, pursuant to a stipulated settlement, the Court ordered plaintiff's action against National dismissed with prejudice. On April 6, 1977, defendants Hertz and Avis moved for partial judgment on the pleadings pursuant to Rule 12 of the Federal Rules of Civil Procedure. The Court heard argument on defendants' motion on May 26, 1977.

Defendants move to dismiss certain of plaintiff's allegations[2] on the ground that the alleged activity complained of is exempted from the coverage of the antitrust laws by the *Noerr-Pennington* doctrine. This doctrine refers to two Supreme Court decisions which have held that the First Amendment guarantees individuals the right to petition governmental bodies in an attempt to influence their decisions, even if the purpose and effect of such influence is anticompetitive. In *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 136, 81 S.Ct. 523, 529, 5 L.Ed.2d 464 (1961), the Supreme Court held that two railroads could legally attempt to convince state legislators and executive officers to enact and enforce legislation restricting the trucking industry, concluding that "the Sherman Act does not prohibit two or more persons from associating together in an attempt to persuade the legislature or the executive to take particular action with respect to a law that would produce a restraint or a monopoly."

Similarly, in *United Mine Workers of America v. Pennington*, 381 U.S. 657, 670, 85 S.Ct. 1585, 1593, 14 L.Ed.2d 626 (1965), the Court held that large coal companies and a labor union could jointly approach the Secretary of Labor to obtain establishment of minimum wages for employees of contractors selling coal to the Tennessee Valley Authority ("TVA"), even though their purpose was to make it difficult for small companies to compete for TVA contracts: "Joint efforts to influence public officials do not violate the antitrust laws even though intended to eliminate competition." In *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510, 92 S.Ct. 609, 611, 30 L.Ed.2d 642 (1972), the Court extended the doctrine to adjudicatory proceedings:

> "The same philosophy governs the approach of citizens or groups of them to administrative agencies (which are both creatures of the legislature, and arms of the executive) and to courts, the third branch of Government. Certainly the right to petition extends to all departments of the Government."

An examination of the *Noerr-Pennington* line of cases reveals that "[t]he basic thrust of these decisions is political". *Sacramento Coca-Cola Bot. Co. v. Chauffeurs Loc. 150*, 440 F.2d 1096, 1099 (9 Cir.), *cert. denied*, 404 U.S. 826, 92 S.Ct. 57, 30 L.Ed.2d 54 (1971). As the Court of Appeals for the Ninth Circuit recently explained in *Franchise Realty v. S. F. Loc. Joint Exec. Bd.*, 542 F.2d 1076, 1080 (9 Cir. 1976):

> "The [Supreme] Court felt that a contrary construction of the Sherman Act would threaten the First Amendment right of petition, and curtail the flow of valuable information to the government from citizens and groups seeking to influence governmental action."

---

thereby raising the minimum guaranteed revenue to airport commissions and effectively excluding the entry into on-airport rental market by competitors, and in particular the plaintiff;

K. To execute in bad faith leases for on-airport auto rental concessions with anti-competitive provisions limiting the number of on-airport rental car concessions, prohibiting the on-airport advertising of rental car companies other than defendants and the on-airport solicitation of rental car business other than that of the defendants; and

L. To recently create a subterfuge of the charges made by the Federal Trade Commission, by fixing low predatory prices for the rental of automobiles to the public with the ultimate predatory intent of eliminating competition, including the plaintiff, and then arbitrarily raising those prices after competition has been destroyed."

2. Defendants have moved to dismiss subparagraphs A, B,.F, H, I, and K of paragraph 14 in the complaint. *See* Memorandum in Support of Motion for Partial Judgment on the Pleadings at 2–3 (filed April 6, 1977).

Because of the First Amendment underpinnings of the doctrine, courts have been reluctant to apply the *Noerr-Pennington* exception to attempts to influence governmental bodies which are acting in a purely commercial capacity. For example, governmental decisions concerning the leasing of a football stadium and the specifications for swimming pools to be purchased by a city have been held to be outside the scope of the doctrine. *Hecht v. Pro-Football, Inc.,* 144 U.S.App.D.C. 56, 444 F.2d 931, 940–942 (1971); *George R. Whitten, Jr., Inc. v. Paddock Pool Builders, Inc.,* 424 F.2d 25, 31–34 (1 Cir.), *cert. denied,* 400 U.S. 850, 91 S.Ct. 54, 27 L.Ed.2d 88 (1970), *on remand,* 376 F.Supp. 125 (D.Mass.), *aff'd,* 508 F.2d 547 (1 Cir. 1974), *cert. denied,* 421 U.S. 1004, 95 S.Ct. 2407, 44 L.Ed.2d 673 (1975). *See Kurek v. Pleasure Driveway and Park District of Peoria,* [1977–1] Trade Reg. Rep. (CCH) ¶ 61,448 at 71,693 & n. 10; *Sacramento Coca-Cola Bot. Co. v. Chauffeurs Loc. 150, supra,* 440 F.2d at 1099.

The *Hecht* and *Whitten* courts both based their decisions, in part, on the assumption that "[t]he First Amendment does not provide the same degree of protection to purely commercial activity that it does to attempts at political persuasion." *George R. Whitten, Jr., Inc. v. Paddock Pool Builders, Inc., supra,* 424 F.2d at 33. *See Hecht v. Pro-Football, Inc., supra,* 444 F.2d at 941–942. The court in *Hecht* also apparently relied on the assumption that the *Noerr-Pennington* exception would not apply to attempts to influence adjudicative agencies. 444 F.2d at 942. Since *Whitten* and *Hecht,* the Supreme Court has extended the *Noerr-Pennington* doctrine to adjudicatory proceedings in *California Motor Transport Co. v. Trucking Unlimited, supra,* 404 U.S. at 510, 92 S.Ct. 609, and has substantially broadened the First Amendment protection available to commercial speech. *See Bates v. State Bar of Arizona,* 45 U.S.L.W. 4895, 4898–4904 (June 27, 1977); *Linmark Associates, Inc. v. Township of Willingboro,* —— U.S. ——, 97 S.Ct. 1614, 52 L.Ed.2d 155 (1977); *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 761–765, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976).

Because the exact contours of the *Noerr-Pennington* exception are unclear, it is extremely important that specific facts relating to the government activity involved in a given case be fully developed. Although the Court of Appeals for the Ninth Circuit recently upheld the dismissal of an antitrust complaint on *Noerr-Pennington* grounds, the governmental activity involved was clearly defined. In *Franchise Realty v. S. F. Loc. Joint Exec. Bd., supra,* 542 F.2d 1076, the court held that the First Amendment protected attempts to persuade the Board of Permit Appeals of the City and County of San Francisco ("Board") to deny a restaurant's applications for building permits. Before deciding whether the *Noerr-Pennington* doctrine applied, however, the court discussed in detail the Board's function and statutory authority, concluding that "the extremely broad standards governing the exercise of that body's discretion" qualify it as a "political body." 542 F.2d at 1079 & n. 1.

This suit, on the other hand, involves the leasing arrangements of automobile rental agencies at approximately 140 airports across the nation. Defendant Hertz, itself, has pointed out that "the considerations relating to the acquisition of an airport car rental concession varies [*sic*] from airport to airport and that, in most situations, each is unique in itself." Affidavit of A. J. Brough, Regional Vice President of Properties and Concessions of The Hertz Corporation for the Southern Region, at 2–3 (filed July 2, 1976) ("Brough Affidavit").

There are significant variations in the procedures followed by airports with respect to the manner by which car rental concessions are awarded. At certain airports, concession agreements are negotiated. At some airports, concessions are awarded on the basis of public bids. At still other airports, concessions are awarded as the result of a process that involves both negotiations and bidding. Brough Affidavit at 4.

Depending upon the individual airport, concession agreements may be awarded by a legislative body, such as a municipal council or city commission, by the mayor or managing director of the local municipal body, or by the airport manager or his staff. Negotiations may be conducted by a city's Director of Public Works, the Director of Finance, or the airport manager or his staff. In some situations, the negotiations may be interspersed with public meetings at which parties outline and discuss their plans. Brough Affidavit at 3–4.

With so much variation among the 140 airports involved in this action, the Court cannot say as a matter of law that defendants' activities at each location are subject to the *Noerr-Pennington* exception. Indeed, defendants themselves admit that "[t]he availability to defendants of * * * *Noerr* defenses * * * will require proof at trial on an airport-by-airport basis." Defendants' Joint Memorandum on Proposed Discovery at 4 (filed July 2, 1976) ("Defendants' Joint Memorandum"). Defendants are absolutely correct in their conclusion that "pre-trial motions [concerning *Noerr* immunity must be] based on a precise and clearly defined factual record," and that "no motions are possible" on an incomplete record. *Id.* at 3. As defendants have observed, application of *Noerr-Pennington* immunity warrants "the same approach" as the application of immunity under *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943): "a thorough and detailed examination of all circumstances surrounding the particular governmental action and competitive foreclosure at issue * * *." Defendants' Joint Memorandum at 5 & n. 2.[3]

The Supreme Court has cautioned that " * * * 'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle

him to relief.' And in antitrust cases, where 'the proof is largely in the hands of the alleged conspirators,' dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly." *Hospital Bldg. Co. v. Rex Hospital Trustees,* 425 U.S. 738, 746, 96 S.Ct. 1848, 1853, 48 L.Ed.2d 338 (1976) (citations omitted).

Defendants have failed to sustain their burden of showing that plaintiff can prove no set of facts that would remove its action from the *Noerr-Pennington* exception. Indeed, defendants have admitted that. the factual circumstances at each airport are "unique."

Accordingly, IT IS HEREBY ORDERED that defendants' motion to dismiss is denied.

---

**3.** The Court is concerned that it was not informed of the apparent change in defendants' position concerning the necessity of factual development before a *Noerr-Pennington* defense could be asserted in this case. Although it is almost inconceivable that plaintiff would not bring such information to the Court's attention, defense counsel's obligations as officers of the court suggest that they, themselves, should have disclosed their reversal in position.