SUN COMMUNICATIONS,
INC., Plaintiff,

v.

WATERS PUBLICATIONS, INC., et al., Defendants.

No. 78–4238–CV–C.

United States District Court,
W. D. Missouri, C. D.

March 6, 1979.

Alan E. Popkin, Frank E. Strzelec, Susman, Stern, Heifetz, Lurie, Sheehan, Popkin & Chervitz, Clayton, Mo., A. Overton Durrett, Kansas City, Mo., for plaintiff.

Terence C. Porter, Columbia, Mo., for defendants.

## ORDER

ELMO B. HUNTER, District Judge.

Defendants move the Court to dismiss Counts I and III of plaintiff's Complaint for lack of subject matter jurisdiction. Defendants state that the actions complained of do not concern "trade or commerce among the several states" as required by §§ 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2. In reviewing a motion for dismissal on the pleadings, the Court

must take as true the material facts pleaded in plaintiff's Complaint. *See, e. g., Hospital Building Co. v. Trustees of the Rex Hospital,* 425 U.S. 738, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976). Plaintiff alleges that "substantial numbers" of the competing newspapers are sold in the State of Missouri and in other states; that "news, features and other information" are gathered daily from all parts of the United States and distributed locally by the competing newspapers; and that advertising space in the newspapers is sold to advertisers throughout the United States. The Supreme Court has held that even activities which do not occur *in* interstate commerce come within the scope of the Sherman Act if they substantially *affect* interstate commerce. *Burke v. Ford,* 389 U.S. 320, 88 S.Ct. 443, 19 L.Ed.2d 554 (1967). In *Lorain Journal Co. v. United States,* 342 U.S. 143, 151–52, 72 S.Ct. 181, 96 L.Ed. 162 (1951), the Court found that the dissemination of news gathered from throughout the nation and of national advertising originating throughout the nation is a part of interstate commerce. Plaintiff's Complaint does set forth facts which, under *Lorain Journal,* adequately allege the required effect on interstate commerce, and therefore defendants' motion to dismiss for lack of subject matter jurisdiction directed at the Sherman Act counts of Plaintiff's Complaint will be denied.

■■■ Defendants' motion to dismiss for lack of subject matter jurisdiction also is directed at Count II, which is brought under § 2(a) of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C. § 13(a). That section requires that the act complained of must occur "in commerce" and therefore the jurisdictional requirements are not met merely by a showing that the act affects commerce. Unless defendants are engaged in interstate commerce, the allegedly discriminatory sales occurred in the course of interstate activities, and one of the allegedly discriminatory sales was made in interstate commerce, this Court has no jurisdiction under § 2(a) of the Clayton Act. *Gulf Oil Corp. v. Copp Paving Co., Inc.,* 419 U.S. 186, 195, 95 S.Ct. 392, 42 L.Ed.2d 378 (1974). In paragraph 6(b) of its Complaint, plaintiff alleges the following:

Retail merchants who were members of the Downtown Merchants' Association were offered newspaper advertising at rates substantially below those charged to retail advertisers who were not members of the Downtown Merchants' Association.

Plaintiff also incorporates by reference an allegation contained in Count I to the effect that defendants sell advertising to advertisers throughout the United States. Mindful that this case is in the pleading stage, the Court considers the above to constitute allegations of an allegedly discriminatory sale in interstate commerce sufficient to confer upon the Court jurisdiction under § 2(a) of the Clayton Act. Whether plaintiff is able to prove that a discriminatory sale in interstate commerce actually took place remains to be seen. Accordingly, defendants' motion to dismiss for lack of subject matter jurisdiction directed at Count II also will be denied.

For the reasons in the preceding paragraph, defendants' motions to dismiss and to strike for failure to state a claim directed at Count II will be denied. Count II contains sufficient allegations of a discriminatory sale in interstate commerce to state a claim under § 2(a) of the Clayton Act.

Defendants' motion to dismiss and to strike for failure to state a claim directed at Counts I and III will also be denied. The Court finds that Counts I and III contain sufficient allegations to state a claim under §§ 1 and 2 of the Sherman Act respectively.

■■■ Defendants' motion to dismiss based on the antitrust exemption provided by the Newspaper Preservation Act, 15 U.S.C. §§ 1801–1803, will be denied. Those sections provide exemption only for joint newspaper operating arrangements either entered into before July 24, 1970, 15 U.S.C. § 1803(a), or entered into with the prior approval of the Attorney General, after a finding that not more than one newspaper in the arrangement is other than a failing newspaper, 15 U.S.C. § 1803(b). Plaintiff's Complaint complains only of the acts of an

arrangement which was formed on November 1, 1975. The Court has not been made aware that such arrangement was entered into with the prior approval of the Attorney General pursuant to 15 U.S.C. § 1803(b). Therefore, it does not appear that the exemption of the Newspaper Preservation Act applies to this case.

■ Defendants' motion to strike certain parts of Counts I, II and III referring to "unreasonably low rates" will also be denied. Defendant is correct in pointing out that there is no private right of action under 15 U.S.C. § 13a (which contains the words "unreasonably low prices"), but plaintiff does not bring this action under that section. Sales which are unprofitable and below cost can be evidence of predatory intent, *Continental Baking Co. v. Old Homestead Bread Company,* 476 F.2d 97 (10th Cir.), *cert. denied,* 414 U.S. 975, 94 S.Ct. 290, 38 L.Ed.2d 218 (1973), therefore, defendants' motion to strike "unreasonably low rates" from Counts I–III will be denied.

■ Defendants move to strike the price discrimination claim contained in Count II[1] on the ground that the sale of newspaper advertising is not a "commodity" under § 2(a) of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C. § 13(a). The Supreme Court has specifically reserved judgment on this issue. *Times-Picayune Publishing Co. v. United States,* 345 U.S. 594, 609 n.27, 73 S.Ct. 872, 97 L.Ed. 1277 (1953). *See also Syracuse Broadcasting Co. v. Newhouse,* 319 F.2d 683 (2d Cir. 1963) (radio advertising). Two district courts have held that newspaper advertising is not a commodity within the meaning of the Clayton Act. *National Tire Wholesale, Inc. v. Washington Post,* 441 F.Supp. 81 (D.D.C.1977); *National Auto Brokers Corp. v. General Motors Corp.,* 1974–2 Trade Cas. ¶ 75,281 (S.D.N.Y.1974). The decision in *National Auto Brokers* does not contain a detailed analysis of that determination. The court in *National Tire Wholesale,* on the other hand, discussed the issue in some detail and concluded that advertising was basically an intangible and therefore not a commodity. The court specifically referred to the Complaint filed on July 27, 1977, by the Federal Trade Commission in the matter of *The Times-Mirror Company,* which was premised on the assumption that newspaper advertising *is* a commodity under § 2(a) of the Clayton Act. The court found that Complaint to be of little precedential value,

> as it merely indicates that staff attorneys at the Federal Trade Commission consider newspaper advertising to be a "commodity" within the purview of the Robinson-Patman Act. It in no way represents the view of the Commission on this issue. *National Tire Wholesale, Inc. v. Washington Post Co., supra,* at 85.

After *National Tire Wholesale* was decided, the F.T.C. entered its Order in The Times-Mirror Company, 3 Trade Reg. Rep. (CCH) ¶ 21,448 (July 27, 1978), in which the Commission reaffirmed the position in its Complaint of July 27, 1977, which is that newspaper advertising is a commodity within the meaning of § 2(a) of the Clayton Act. The F.T.C. found that treatment of newspaper advertising as a commodity was consistent with the language and spirit of the Clayton Act and that price discrimination in newspaper advertising could have as great an impact on competition at the retail level as price discrimination associated with the purchase and resale of products by retailers. The Commission took what could be termed a practical approach to the characterization of newspaper advertising, which is neither purely service nor tangible product.

> In our view the proper course is to construe that term "commodities" in light of the fundamental purposes and structure of the statute, rather than becoming preoccupied with metaphysical considerations about what is or is not a tangible product.

Although the construction to be given the Clayton Act is a proper function of the courts, the expertise of the F.T.C. in the area of trade regulation is entitled to considerable respect. *F. T. C. v. Colgate-Palm-*

---

1. Defendant erroneously refers to Count III in its motion.

*olive Co.,* 380 U.S. 374, 85 S.Ct. 1035, 13 L.Ed.2d 904 (1965); *Sun Oil Co. v. F. T. C.,* 294 F.2d 465 (5th Cir. 1961). Therefore, it is the opinion of this Court that newspaper advertising is a commodity within the meaning of § 2(a) of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C. § 13(a).[2] Accordingly, defendants' motion to strike Count II will be denied.

Defendants move to strike Count I on the ground that plaintiff alleges that the activities complained of were carried out by one person and that therefore there can be no combination or conspiracy under § 1 of the Sherman Act. Count I contains allegations that the activities complained of were carried out by two corporations and one individual. At this stage of the case, there is nothing before the Court to indicate that the acts complained of were carried out by only one person. Therefore, defendants' motion will be denied.

IT IS SO ORDERED.

2. In *Morning Pioneer, Inc. v. Bismarck Tribune Co.,* 493 F.2d 383, 389 n.11 (8th Cir. 1974), the Eighth Circuit recognized that the newspaper itself is a commodity within the meaning of the statute, even though its production requires and incorporates the services of a great number of people. "[W]hen finally published, the paper takes on a tangible form . . . ."