John M. ("Jack") BELL and John Robert ("Bob") Bell, Plaintiffs,

v.

FUR BREEDERS AGRICULTURAL CO-OPERATIVE, a cooperative organized under the laws of Utah; Dane Dixon, Jack Marchant, Lynn Mathews, Stan Peterson, Stan Stuart, Kent Vernon, Rick Westwood, and John Does 1 through 15 being former director/members of Fur Breeders Agricultural Cooperative, Defendants.

No. 2:96–CV–0939–S.

United States District Court, D. Utah, Central Division.

April 13, 1998.

Roy B. Moore, Steven Day, Roy B. Moore PC & Associates, Salt Lake City, UT, Barry N. Johnson, Salt Lake City, UT, for Plaintiffs.

Perrin R. Love, Campbell Maack & Sessions, Salt Lake City, UT, R. Scott Rawlings, Salt Lake City, UT, for Defendants.

ORDER

SAM, Chief Judge.

This matter is before the court for resolution of defendants' motion to dismiss plaintiffs' antitrust claims under Section 2(a) and (f) of the Clayton Act, as amended by the Robinson–Patman Act. The court has re-

ceived and reviewed substantial briefing on the issues presented, including briefs filed in connection with plaintiffs' motions to amend their complaint which also addressed the arguments regarding dismissal of the antitrust claims. In addition, counsel were present for oral argument on April 1, 1998. Having heard and considered the parties' arguments the court issues the following memorandum decision.

The court previously allowed plaintiffs to file the second amended complaint. In the briefing relative to the proposed amendments, counsel for all parties updated their arguments relating to the defendants' motion to dismiss. Hence, while defendants' motion to dismiss initially related to the original complaint, defendants, as well as plaintiffs, have had a full and fair opportunity to brief all issues as they apply to the second amended complaint. Therefore, the issue before the court is whether the antitrust claims contained in the Second Amended Complaint are sufficient to withstand the motion to dismiss.[1]

In all areas of the law, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The standard is even more rigorous in antitrust cases "where 'the proof is largely in the hands of the alleged conspirators,' . . . ." *Hospital Building Co. v. Trustees of Rex Hospital,* 425 U.S. 738, 746, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976), citing *Poller v. Columbia Broadcasting,* 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). In such cases, "dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly." *Hospital Building,* 425 U.S. at 746, 96 S.Ct. 1848.

■ Section 2(a) makes it unlawful "for any person engaged in commerce to discriminate in price between different purchasers of commodities of like grade and quality where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination." 15 U.S.C. Sec. 13(a). The first point of contention between the parties is whether plaintiffs were discriminated against "in price" as is meant under the statute. There is no allegation they paid a higher invoiced price; rather they are saying that when you add the cost they incur to pick up the feed, they are in effect paying a higher price. The Tenth Circuit has given instruction on defining "price discrimination" under Section 2(a):

Section 2(a) is directed to price discrimination and nothing more. Price is to be determined by reference to the invoice submitted to the buyer, and "any discounts, offsets, or allowances not reflected in the invoice price." 4 J. von Kalinowski, supra § 27.03[2]. Some delivery practices may constitute a violation of section 2(a) because they directly or indirectly affect the price paid for the goods. See, e.g., *Corn Products Refining Co. v. FTC,* 324 U.S. 726, 740, 65 S.Ct. 961, 968, 89 L.Ed. 1320 (1945); 4 J. von Kalinowski, supra § 27.03[3], § 27.03[4] n. 45 and text accompanying. However, a violation of section 2(a) only arises when "discriminations in the terms of sale [operate] to permit the favored customers to purchase at a lower price than other customers, so that their only practical effect [is] to establish discriminations in price, precisely the evil at which the statute was aimed." *Corn Products,* 324 U.S. at 740, 65 S.Ct. at 968. "[T]he act is inapplicable to 'terms of sale except as they amount in effect to the indirect discriminations in price within the meaning of the remainder of subsection (a).'" *Id.* (quoting H.R.Rep. No. 2951, 74th Cong., 2d Sess. 5) (emphasis added).

*Black Gold Ltd. v. Rockwool Industries, Inc.,* 729 F.2d 676, 682 (10th Cir.1984). In *Black*

---

1. Defendants originally moved to dismiss all of the claims in the original complaint; however, in their Reply they withdrew their motion as it applies to the breach of contract and breach of fiduciary duty claims. In addition, plaintiffs' Second Amended Complaint withdraws any claims under Section 2(e) of the Robinson–Patman Act. Accordingly, the court will not address the 2(e) claims which were also the subject of the original motion to dismiss.

*Gold* the plaintiff did not claim that the untimely deliveries had any effect upon the price it paid for the product at issue. Hence the court concluded there was no section 2(a) violation.

In contrast, the plaintiffs in the case before this court have alleged that the additional cost they incur to pick up the feed results in indirect price discrimination. They allege the Coop's practice of delivering feed free of charge to all other members of the Coop permits those members, plaintiffs' competitors, to in effect purchase the feed at a lower price and hence, the result is a discrimination in price in violation of section 2(a).

■ Accordingly, the court finds defendants' delivery practices as alleged in the Second Amended Complaint are within the prohibition of section 2(a). Furthermore, the court finds plaintiffs have sufficiently alleged that the discrimination was substantial in terms of amount and duration. *See* Second Amended Complaint at paras. 19 and 30. The court then turns to whether, as a matter of law, plaintiffs have alleged that the discrimination at issue has the prescribed effect on competition. As noted above, section 2(a) only prohibits discriminations whose effect may be to substantially lessen competition. It is important to note, however, that "the statute does not require that the discriminations must in fact have harmed competition, but only that there is a reasonable possibility that they 'may' have such an effect." *Corn Products,* 324 U.S. 726, 743, 65 S.Ct. 961, 89 L.Ed. 1320 (1945). *See also, J. Truett Payne Co. Inc., v. Chrysler Motors Corp.,* 451 U.S. 557, 561, 101 S.Ct. 1923, 68 L.Ed.2d 442 (1981) ("By its terms § 2(a) is a prophylactic statute which is violated merely upon a showing that 'the effect of such discrimination may be substantially to lessen competition.' ")(Emphasis supplied in original). "This reasonable possibility of harm is often referred to as competitive injury." *Falls City Industries, Inc. v. Vanco Beverage, Inc.,* 460 U.S. 428, 435, 103 S.Ct. 1282, 75 L.Ed.2d 174 (1983).

■ With those statements of law in mind, the court looks at the allegations of the Second Amended Complaint and reasonable inferences to be drawn therefrom. Plaintiffs allege intense competition in the fur breeding industry and relatively low profit margins. Second Amended Complaint at para. 31. In addition, the price discrimination results in even lower profit margins for plaintiffs which affects their ability to compete and gives their competitors an advantage. Second Amended Complaint at paras. 21 and 40. Plaintiffs cite to *Falls City,* 460 U.S. at 435, 103 S.Ct. 1282, for the statement of what amounts to competitive injury. "[F]or purposes of § 2(a), injury to competition is established prima facie by proof of a substantial price discrimination between competing purchasers over time." *Id.* (citations omitted). The court finds this presumption applicable and facts supporting it adequately alleged in the Second Amended Complaint. Defendants don't argue with this presumption, but rather are quick to point out that "[i]n the absence of displaced sales, this inference may be overcome by evidence breaking the causal connection between a price differential and lost sales or profits." *Id.* (citations omitted).

It is undisputed that defendants' practices have not resulted in displaced sales or lower retail prices, due in large part to the fact that "[i]n the fur breeding line of commerce, the final product is sold at auction, thereby eliminating any possibility of lowering resale prices or diverting sales." Second Amended Complaint at para. 38. This does not, however, end the inquiry or completely rebut the presumption of competitive injury. The court finds the causal connection between the price differential and plaintiffs' lower profits due to increased costs caused by the defendants' acts is not broken by the auction scenario. Rather, plaintiffs' allegation that the "industry operates on relatively low profit margins such that the alleged discrimination provided plaintiff's competitors with a significant competitive advantage even if it did not directly affect retail prices" is enough to justify the court's inference of competitive injury. *See Foremost Pro Color, Inc. v. Eastman Kodak Co.,* 703 F.2d 534, 548 (9th Cir.1983). *See also Motive Parts Warehouse, v. Facet Enterprises,* 774 F.2d 380,

394–395 (10th Cir.1985).[2]

Accordingly, the court finds plaintiffs' allegations demonstrate a reasonable possibility of competitive injury and that, consistent with the authority cited by the parties and relied upon by the court, competitive injury can be inferred in injunctive actions brought to enforce section 2(a).

■ Having concluded that plaintiffs' claims under section 2(a) for injunctive relief can survive the motion to dismiss, the court will look at the remaining issue involving plaintiffs' damages claim under section 4 of the Clayton Act. *J. Truett Payne* effectively highlights the differences between the "competitive injury" required under section 2(a) and "antitrust injury" pursuant to section 4 of the Clayton Act which provides treble damages to "[a]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws...." 451 U.S. at 562, 101 S.Ct. 1923.[3]

> To recover treble damages, then, a plaintiff must make some showing of actual injury attributable to something the antitrust laws were designed to prevent. *Perkins v. Standard Oil Co.*, 395 U.S. 642, 648, 89 S.Ct. 1871, 1874, 23 L.Ed.2d 599 (1969) (plaintiff "must, of course, be able to show a causal connection between the price discrimination in violation of the Act and the injury suffered.") It must prove more than a violation § 2(a), since such proof establishes only that injury to competition may result.

*J. Truett Payne*, 451 U.S. at 562, 101 S.Ct. 1923. The law is clear that establishing a section 2(a) claim does not necessarily establish "antitrust injury" and entitle the plaintiff to damages. *See Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977) (the mere violation of section 7 of the Clayton Act, which prohibits mergers which may substantially lessen competition, does not automatically give rise to a damages claim under section 4).

*See also J. Truett Payne*, 451 U.S. at 562, 101 S.Ct. 1923 (proof of a section 2(a) violation does not mean that a disfavored purchaser has been actually "injured" within the meaning of section 4).

Plaintiffs' allegations of antitrust injury include the following:

> 37. The Plaintiffs, as a result of the defendants' violations, have suffered actual injury which the antitrust laws were designed to prevent.

> 38. In the fur breeding line of commerce, the final product is sold at auction, thereby eliminating any possibility of lowering resale prices or diverting sales.

> 39. In such a market for fungible goods, with low profit margins and intense competition, a competitor's ability to decrease costs grants such competitor increased profit margins.

> 40. In a market with relatively low profit margins and intense competition, a substantial decrease in profit margin adversely affects a competitor's ability to compete which 15 U.S.C. § 13 was designed to prevent.

> 41. The illegal and improper action by the Defendants set forth in the preceding paragraphs is a material and direct cause of substantial lost profits for Plaintiffs in such amounts as shall be proven at trial.

> 42. Plaintiffs are entitled to damages, including treble damages for not less than the past four years as a result of said violations of the Robinson–Patman Act together with the cost of suit and a reasonable attorney's fee in prosecuting this action pursuant to 15 U.S.C. § 15.

Second Amended Complaint at 10.

Analyzing this issue in the context of a motion to dismiss requires the court to construe all allegations in the complaint in favor of plaintiffs, the non-moving parties. *Conley*, 355 U.S. at 45–46, 78 S.Ct. 99. Applying the

---

**2.** It seems obvious to the court that plaintiffs' competitive opportunities may be harmed when it is forced to incur $16–17,000 dollars in costs to pick up feed that its competitors have delivered at no cost. This is clearly the type of competitive injury the Robinson–Patman Act was designed to discourage and prevent.

**3.** Plaintiffs have made both a claim for injunctive relief pursuant to section 2(a), as noted above, and for damages pursuant to section 4 of the Clayton Act. Second Amended Complaint at paras. 33 and 42.

rigorous standard suggested in antitrust cases, the court must conclude that the plaintiffs' claims for damages under section 4 of the Clayton Act should not be dismissed. Defendants strenuously argued that increased costs are not the equivalent of lost profits and in this way tried to distinguish most of the cases relied on by plaintiffs to support the validity of their claims. Despite defendants proffer that there is not one case holding that increased costs equal lost profits, where, as here, the defendants conduct directly caused the increased costs and the market is one with relatively low profit margins and plaintiffs cannot raise their prices to make up the difference, the court will find that the causal link exists and that plaintiffs alleged injury is the type the antitrust laws were designed to prevent. Plaintiffs allegations are sufficient to withstand the motion to dismiss.[4]

Accordingly, defendants' motion to dismiss is denied.

So Ordered.

---

**4.** Neither party's arguments highlighted plaintiffs' section 2(f) claim distinct from the section 2(a) claim. While it is undisputed that the 2(f) claim is derivative in nature and cannot proceed without the 2(a) claim, the converse is not necessarily true. Nevertheless, the court infers from the parties' lack of attention to the section 2(f) claim that it was not at issue in the motion to dismiss separate from consideration of the 2(a) claim.