**Dr. James R. BRILLHART,**
**Plaintiff-Appellant,**

v̇.

**MUTUAL MEDICAL INSURANCE,**
**INC., d/b/a Blue Shield of**
**Indiana, Defendant-Appellee.**

**No. 84–2269.**

United States Court of Appeals,
Seventh Circuit.

Argued May 22, 1985.
Decided July 23, 1985.

Richard Brown, Richards, Caress, Vargo, Light & Brown, Indianapolis, Ind., for plaintiff-appellant.

Helen E. Witt, Kirkland & Ellis, Chicago, Ill., for defendant-appellee.

Before WOOD and FLAUM, Circuit Judges, and WYATT, Senior District Judge.*

FLAUM, Circuit Judge.

This case presents the issue of whether a contract between a medical insurance company and physicians, pursuant to which the insurance company buys the physicians' services, constitutes a violation of sections one and two of the Sherman Antitrust Act and section three of the Clayton Antitrust Act. The district court dismissed the plaintiff doctor's complaint for failure to state a claim upon which relief may be granted. On appeal, we affirm.

I.

The plaintiff Dr. James R. Brillhart is a licensed medical physician with a practice in Indiana. The defendant Blue Shield is a nonprofit Indiana corporation engaged in providing health care insurance. In 1982, Blue Shield instituted a Voluntary Incentive Program ("V.I.P."), a provider agreement that allows Blue Shield to provide prepaid medical insurance to its subscribers and their dependents. A doctor can elect to participate in the V.I.P. program and can terminate his agreement with Blue Shield upon thirty days' written notice. Under this program, a doctor agrees to provide medical services to Blue Shield subscribers for a price determined by Blue Shield based on its "usual, customary, or reasonable" payment policies. In exchange for accepting payment according to the price schedule, the doctor is directly reimbursed by Blue Shield and does not need to bill the patient. Nonparticipating doctors, such as

* The Honorable Inzer B. Wyatt, Senior District Judge for the Southern District of New York, is sitting by designation.

the plaintiff, remain free to charge their patients who are Blue Shield subscribers any price that they choose, but Blue Shield will reimburse the patient directly for only the usual, customary, or reasonable amount. The patient will thus be liable to his doctor for the remainder.

On August 4, 1983, the plaintiff brought suit against Blue Shield in the United States District Court for the Southern District of Indiana, alleging that Blue Shield's provider agreement with Indiana doctors violated sections one and two of the Sherman Antitrust Act and section three of the Clayton Antitrust Act and claiming treble damages of $5.1 million, attorneys' fees, and costs. On September 16, 1983, Blue Shield filed a motion to dismiss. On July 16, 1984, the district court granted the motion, holding that the defendant's conduct pursuant to the provider agreement was not the type of conduct that the antitrust laws were intended to prohibit. The plaintiff's only argument on appeal is that the physicians who control the board of directors of Blue Shield are, through Blue Shield, engaged in illegal price-fixing with competing Indiana doctors who participate in the V.I.P. program. The plaintiff concludes that Blue Shield must itself be considered a competitor of the participating doctors and thus also engaged in illegal price-fixing.

## II.

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to make a motion to dismiss based on the plaintiff's failure to state a claim upon which relief can be granted. The Supreme Court has held that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Although the Supreme Court has held that motions to dismiss in the antitrust context should be granted very sparingly because proof of the conspiracy may be in the hands of the conspirators, *Hospital Building Co. v. Trustees of Rex Hospital,* 425 U.S. 738, 746, 96 S.Ct. 1848, 1853, 48 L.Ed.2d 338 (1976), this circuit has held that the Court's expansive view has never been taken literally. *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1106 (7th Cir.1984); *Sutliff, Inc. v. Donovan Companies, Inc.,* 727 F.2d 648, 654 (7th Cir. 1984). Thus, this circuit has held that a court can properly grant a motion to dismiss on the pleadings if there is no reasonable prospect that the plaintiff can make out a cause of action from the events related in the complaint. *Carl Sandburg Village Condominium Ass'n No. 1 v. First Condominium Development Co.,* 758 F.2d 203, 207 (7th Cir.1985).

▋ Section one of the Sherman Antitrust Act provides that "every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations" shall be illegal. 15 U.S.C. § 1 (1982). The plaintiff in this case argues that because Blue Shield's board of directors is controlled by physicians, Blue Shield is a competitor of the doctors who have chosen not to participate in the V.I.P. program. He concludes that Blue Shield is restraining trade through horizontal price-fixing, which is a *per se* illegal offense under the antitrust laws.[1] We disagree.

---

1. We note that the plaintiff has made the additional argument for the first time on appeal that Blue Shield is a "health care provider" under Indiana statutory law because Blue Shield provides services, such as the V.I.P. program, which are incidental to the furnishing of health care services. The plaintiff does not explain the significance of this classification, but presumably the plaintiff intends to argue that an agreement between Blue Shield as a health care provider and the doctors participating in the V.I.P. pro-

gram as health care providers constitutes illegal price-fixing.

Assuming this to be so, a classification of Blue Shield under Indiana law would not be relevant in determining whether Blue Shield for federal antitrust purposes was a competitor of doctors, either those who participate in the V.I.P. program or those who do not. In any event, we do not decide this argument because it was never presented to the district court. *See Stern v. United States Gypsum, Inc.,* 547 F.2d 1329, 1333

The Supreme Court has held that an agreement between Blue Shield and participating pharmacies whereby Blue Shield reimbursed the pharmacies for any prescription drugs purchased by subscribers was merely an arrangement for the purchase of goods and services. *Group Life and Health Insurance Co. v. Royal Drug Co.*, 440 U.S. 205, 214, 99 S.Ct. 1067, 1074, 59 L.Ed.2d 261 (1979). *See also Kartell v. Blue Shield of Massachusetts, Inc.*, 749 F.2d 922, 924–25 (1st Cir.1984) (Blue Shield is a purchaser of participating doctors' medical services for the account of its subscribers), *cert. denied,* —— U.S. ——, 105 S.Ct. 2049, 85 L.Ed.2d 322 (1985); *Royal Drug Co. v. Group Life and Health Insurance Co.*, 737 F.2d 1433, 1438 (5th Cir.1984) (agreements between Blue Shield and participating pharmacies to supply prescription drugs are arrangements for the purchase of goods and services), *cert. denied,* —— U.S. ——, 105 S.Ct. 912, 83 L.Ed.2d 925 (1985); *Medical Arts Pharmacy of Stamford, Inc. v. Blue Cross & Blue Shield of Connecticut, Inc.*, 675 F.2d 502, 505 (2d Cir.1982) (Blue Cross is a purchaser of prescribed drugs from pharmacies participating in agreements with Blue Cross); *Sausalito Pharmacy, Inc. v. Blue Shield of California*, 544 F.Supp. 230, 233, 238 (N.D. Cal.1981) (Blue Shield is a purchaser of prescription drugs and services from pharmacies participating in its program), *aff'd,* 677 F.2d 47 (9th Cir.), *cert. denied,* 459 U.S. 1016, 103 S.Ct. 376, 74 L.Ed.2d 510 (1982). *Cf. Quality Auto Body, Inc. v. Allstate Insurance Co.*, 660 F.2d 1195, 1203 (7th Cir.1981) (agreements between insurance company and repair shops constitute buy/sell arrangement whereby insurance company as buyer purchases repair services from the shops as sellers), *cert. denied,* 455 U.S. 1020, 102 S.Ct. 1717, 72 L.Ed. 138 (1982). Similarly, in the present case, Blue Shield is merely purchasing medical services from doctors who choose to participate in its V.I.P. program. The plaintiff cannot make out a cause of action for horizontal price-fixing since the alleged agreement between Blue Shield and participating doctors does not run between competitors in the medical services industry or between competitors in the insurance industry. *See Royal Drug Co. v. Group Life*, 737 F.2d at 1436–37. *Cf. Arizona v. Maricopa County Medical Society*, 457 U.S. 332, 102 S.Ct. 2466, 73 L.Ed.2d 48 (1982) (holding that an overt agreement among competing health care providers to establish the maximum fees that doctors could claim for services rendered to policyholders is *per se* unlawful as horizontal price-fixing).

 Since the agreement in the present case runs between an insurance company (the buyer) and individual doctors (the sellers), the arrangement is really vertical, rather than horizontal. Thus, we will proceed to examine whether this vertical agreement constitutes an unreasonable restraint of trade under the rule of reason.[2]

The courts that have examined provider agreements between insurance companies and either doctors, pharmacies, or auto re-

(7th Cir.), *cert. denied,* 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1977).

**2.** This circuit has held that provider agreements should be subjected to a rule of reason analysis rather than a *per se* analysis under the antitrust laws. *Quality Auto Body, Inc. v. Allstate Insurance Co.*, 660 F.2d 1195, 1203 (7th Cir.1981), *cert. denied,* 455 U.S. 1020, 102 S.Ct. 1717, 72 L.Ed.2d 138 (1982). Certain types of contractual agreements have been deemed unreasonable as a matter of law by the courts and thus *per se* illegal. *See Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 104 S.Ct. 1551, 1556, 80 L.Ed.2d 2 (1984). The courts presume the unreasonableness of a *per se* illegal restraint of trade without analyzing the market context in which the agreement is found. *Id.* Under the rule of reason, however, a court does not presume illegality, but rather inquires into the actual effects of the agreement on competition. *Id.* at 1567. Since the Supreme Court has been reluctant "to recognize *per se* violations of the antitrust laws without [having] considerable knowledge of the business practice in question and the impact of those practices on competition," we have held that a *per se* analysis is not appropriate in cases involving provider agreements where the anticompetitive effects are far from obvious and perhaps nonexistent. *Quality Auto Body v. Allstate Insurance*, 660 F.2d at 1203. Thus, we will examine the provider agreement in the instant case under the rule of reason.

pair shops have concluded that such arrangements do not constitute unreasonable vertical restraints of trade.[3] *See, e.g., Kartell v. Blue Shield,* 749 F.2d at 925–30; *Royal Drug v. Group Life,* 737 F.2d at 1437–39; *Medical Arts Pharmacy v. Blue Cross,* 675 F.2d at 505–06; *Quality Auto Body v. Allstate Insurance,* 660 F.2d at 1201–05; *Sausalito Pharmacy v. Blue Shield,* 544 F.Supp. at 233–39. In *Quality Auto Body v. Allstate Insurance,* this circuit held that provider agreements unilaterally entered into by several insurance companies with individual auto repair shops did not constitute illegal vertical price-fixing arrangements. 660 F.2d at 1201–05. Pursuant to these agreements, an insurance company would provide its insured with a list of repair shops that would perform the necessary repair work at a rate established by the company. *Id.* at 1197–99. If an insured had his repair work done at a non-participating shop, then the insured would have to pay the difference between the insurance company's prevailing competitive rate and the higher rate charged by his shop. *Id.* We held that such an agreement between an insurance company and a participating repair shop did not violate the Sherman Antitrust Act because the agreement did not contain any restrictions on either of the party's activities other than the price that the repair shop could charge. *Id.* at 1203. We concluded that the insurance companies were merely taking steps to insure the best terms available in the marketplace by firmly indicating to the repair shops their position on price. *Id.* We held that rather than violating the antitrust laws, such provider agreements show aggressive and competitive behavior by the insurance companies to obtain a competitive price that will probably redound to the benefit of consumers. *Id.* at 1203–04.

■ In a case like the present one involving a provider agreement between Blue Shield and individual doctors, the First Circuit held that the agreement did not constitute an unreasonable restraint of trade because Blue Shield was merely acting as a purchaser of medical services for the account of its insureds. *Kartell v. Blue Shield,* 749 F.2d at 925. The court noted that the antitrust laws generally allow a buyer to determine the price or characteristics of the product that it would like to purchase. *Id.* The court concluded that since Blue Shield is free to insist upon a lower charge, then it should also be free to pass those savings along to its subscribers through lower prices. *Id.* at 930. Thus, the courts that have examined provider agreements have concluded that the plaintiffs' real complaint in cases involving provider agreements has been their failure to make more money. *See Sausalito Pharmacy v. Blue Shield,* 544 F.Supp. at 235. Since the antitrust laws are designed to protect competition and not competitors, *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 488, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977), these provider agreements have not been found to violate the antitrust laws.

■ In the present case, we hold that the provider agreement between Blue

---

**3.** The Supreme Court has not yet addressed the issue of whether a provider agreement between an insurance company and another party such as a doctor, pharmacy, or auto repair shop violates the antitrust laws. In *Group Life and Health Insurance Co. v. Royal Drug Co.,* 440 U.S. 205, 99 S.Ct. 1067, 59 L.Ed.2d 261 (1979), the Court specifically stated that it was not deciding whether provider agreements between Blue Shield and various pharmacies were illegal under the antitrust laws, but rather deciding whether such agreements were the "business of insurance" and thus immune from antitrust attack under the McCarran-Ferguson Act, 15 U.S.C. § 1012(b) (1982). *Id.* at 210, 99 S.Ct. at 1072. The Court noted, however, that the Unit-

ed States had taken the position in its amicus brief that the provider agreements probably did not violate the antitrust laws. *Id.* at 210 n. 5, 99 S.Ct. at 1072 n. 5; *Arizona v. Maricopa County Medical Society,* 457 U.S. 332, 353 n. 26, 102 S.Ct. 2466, 2477 n. 26, 73 L.Ed.2d 48 (1982). Furthermore, contrary to the plaintiff's argument that *Arizona v. Maricopa County* is directly on point, the Court in that case expressly noted that the case did not present the issue of whether an insurer could, consistent with the Sherman Antitrust Act, fix the maximum fees that participating doctors could charge its policyholders and enter into bilateral contracts with individual doctors. *Id.* at 353 n. 26, 102 S.Ct. at 2477 n. 26.

Shield and the individual doctors does not constitute an illegal vertical price-fixing arrangement, but rather constitutes a legitimate contract between a buyer of medical services and sellers of such services. The antitrust laws do not prohibit a buyer from bargaining for the best deal possible. As the district court noted, the conduct by Blue Shield in the present case is not the type of conduct that the antitrust laws were intended to prohibit. This conclusion is especially true where there is no suggestion that Blue Shield ever conspired with any other health care insurer to set prices, where nonparticipating doctors remain free to charge their patients whatever price that they choose, and where participating doctors remain free to charge non-Blue Shield subscribers whatever price that they choose. In sum, the provider agreement in this case does not violate the antitrust laws.

In conclusion, the district court's dismissal of Dr. Brillhart's complaint against Blue Shield is affirmed.