107 F.3d 871
 1997-1 Trade Cases P 71,774
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Thomas E. MANDAT, M.D., Plaintiff-Appellant,
v.
COMMUNITY MUTUAL LIFE INSURANCE COMPANY, Defendant-Appellee.
 No. 96-3137.
 United States Court of Appeals, Sixth Circuit.
 Feb. 25, 1997.
 
 BEFORE: KENNEDY, NELSON, and VAN GRAAFEILAND, Circuit Judges.*
 PER CURIAM.
 
 
 1
 Thomas E. Mandat, M.D. appeals from an Order granting Community Mutual Insurance Company's ("CMIC") Rule 12(b)(6) motion to dismiss his complaint, which alleges violations of the Sherman Act and related state law claims. For the reasons that follow, we affirm.
 
 
 2
 In 1983, Dr. Mandat entered into a preferred provider agreement with CMIC pursuant to which CMIC agreed to reimburse Mandat for covered services rendered his patients who were insured by CMIC. As originally written, the agreement allowed Mandat to provide necessary laboratory tests for his patients.
 
 
 3
 In 1994, CMIC unilaterally modified the agreement to require that Mandat and other providers refer all "ancillary services", which include lab work, to third parties who are under contract with CMIC. Because of provider protests, CMIC agreed that certain tests still might be performed by the treating physician. However, CMIC required that approximately seventy percent of laboratory tests be referred to outside laboratories designated by CMIC.
 
 
 4
 Mandat alleges that (1) CMIC's use of a substantial market power in the Ohio insurance market to restrain competition for laboratory services is an unlawful tying arrangement in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1; (2) that the same conduct constitutes a group boycott of providers such as Mandat also in violation of Section 1; and (3) that CMIC uses its "willfully acquired" economic power to restrain trade in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2. Mandat also alleges related state law causes of action. The District Court granted CMIC's motion to dismiss. It held that the complaint fails to state a legally cognizable federal antitrust claim and it declined to exercise jurisdiction over the state claims.
 
 THE ALLEGED TYING ARRANGEMENT
 
 5
 Section 1 of the Sherman Act provides in pertinent part:
 
 
 6
 Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal....
 
 
 7
 A tying arrangement is one form of an illegal restraint of trade. It is "an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that product from any other supplier." Northern Pac. Ry. Co. v. United States, 356 U.S. 1, 5-6 (1958). The district court held that the complaint failed to state an unlawful tying claim because CMIC is a buyer of laboratory services and thus does not sell a tied product. In Group Life & Health Ins. Co. v. Royal Drug Company, 440 U.S. 205 (1979), which involved a preferential prescription arrangement available to insureds, the Court, in holding that the agreement was not "the business of insurance", described it as merely an arrangement "for the purchase of goods and services" by the insurer. Id. at 214. Since the decision in Royal Drug, courts generally have held that health insurance companies are purchasers of medical services on behalf of their insurers and as such have the right to dictate the terms of their purchase. For example, in Kartell v. Blue Shield of Massachusetts, Inc., 749 F.2d 922 (1st Cir.1984), cert. denied, 471 U.S. 1029 (1985), Blue Shield paid doctors for treating patients insured by Blue Shield so long as each doctor promised not to charge the patient an additional fee for the service. Although this practice in combination with Blue Shield's size and buying power resulted in rigidly low set prices, the court held that it did not unreasonably restrain trade because Blue Shield was a purchaser of health services for its insureds. The court said, "[a]ntritrust law rarely stops the buyer of a service from trying to determine the price or characteristics of the product that will be sold." Id. at 925.
 
 
 8
 In Westchester Radiological Associates P.C. v. Empire Blue Cross & Blue Shield, Inc., 707 F.Supp. 708 (S.D.N.Y.), aff'd. on opin. below, 884 F.2d 707 (2d Cir.1989), cert. denied, 493 U.S. 1095 (1990), radiologists claimed that agreements between Blue Cross and certain hospitals prevented plaintiffs from directly billing patients who were Blue Cross subscribers and thereby restrained competition in violation of Section 1. The District Court followed Kartell and similar cases and granted summary judgment in favor of the defendants. It stated that, "Blue Cross is simply acting as a rational buyer attempting to get the best possible terms for its subscribers." Id. at 713; see also Brillhart v. Mutual Medical Ins., Inc., 768 F.2d 196, 199 (7th Cir.1985); Medical Arts Pharmacy of Stamford, Inc. v. Blue Cross & Blue Shield of Connecticut, Inc., 675 F.2d 502, 505 (2d Cir.1982).
 
 
 9
 Mandat's reliance upon Eastman Kodak Co. v. Image Technical Services, Inc., 504 U.S. 451 (1992), is misplaced. In that case, plaintiffs were service agencies that repaired Kodak equipment whose parts were unique and not compatible with the equipment of other manufacturers. The Supreme Court held that this uniqueness created a relevant market under the Sherman Act. There is no such limited relevant market in the instant case. CMIC's alleged anticompetitive conduct therefore must be viewed with respect to the general pertinent markets for laboratories and health insurance. Viewed in this manner, no Sherman Act violation has been alleged.
 
 GROUP BOYCOTT
 
 10
 The agreement at issue herein was not between competitors so as to ease Mandat's burden of proving conspiracy. See Royal Drug Co. v. Group Life & Health Ins. Co., 737 F.2d 1433, 1436-37 (5th Cir.1984), cert. denied, 469 U.S. 1160 (1995); Brillhart, supra, 768 F.2d at 199-200. It was a vertical arrangement between buyer and seller. CMIC did not engage in any concerted conduct with others nor did it prevent Mandat from selling his laboratory services to others. There are no allegations in the complaint that CMIC acted other than alone in directing its own purchases of laboratory services. Its unilateral refusal to deal is not a group boycott.
 
 
 11
 WILLFUL ACQUISITION OF ECONOMIC POWER AND RESTRAINT OF TRADE
 
 
 12
 "A firm has monopolized in violation of Section 2 if it has deliberately followed a course of market conduct through which it has obtained or maintained power to control price or exclude competition in some part of the trade or commerce covered by the act." Lawrence A. Sullivan, Antitrust 29 (1977); see also Beard v. Parkview Hosp., 912 F.2d 138, 144 (6th Cir.1990). The District Court held that the complaint does not adequately allege how the agreements at issue restrain trade. Although Mandat himself claims injury because of the decrease in his lab sales, the District Court correctly noted that the antitrust laws are designed to protect competition, not competitors. See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 488 (1977). The District Court reasoned that the agreements are pro-competitive because they are likely to benefit health care consumers by opening the door to lower costs and higher quality services. We agree.
 
 
 13
 CMIC did not exclude anybody from competing. CMIC merely transferred its purchases of laboratory services from participating doctors to certain designated third parties. There is no allegation that CMIC's insureds could not use Mandat's laboratory services, or anyone else's, so long as they were willing to pay for them. The agreements did not result in an unreasonable restraint of trade.
 
 
 14
 The Order of the District Court dismissing the complaint is affirmed.
 
 
 
 *
 The Honorable Ellsworth A. Van Graafeiland, United States Circuit Judge for the Second Circuit, sitting by designation