LEASE LIGHTS, INC., Jack R. Seay, d/b/a Seay Electric Company, Knight Lights Company, Inc., and Protective Lighting, Inc., Plaintiffs-Appellants, Cross-Appellees,

v.

PUBLIC SERVICE COMPANY OF OKLAHOMA, a corporation, Defendant-Appellee, Cross-Appellant.

Nos. 81–1462, 81–1781 and 81–1712.

United States Court of Appeals, Tenth Circuit.

March 9, 1983.

Rehearing Denied April 14, 1983.

Jack I. Gaither, Tulsa, Okl. (Bruce Darrow Gaither, Tulsa, Okl., with him on the briefs), for plaintiffs-appellants, cross-appellees.

Floyd L. Walker of Pray, Walker, Jackman, Williamson & Marlar, Tulsa, Okl., for defendant-appellee, cross-appellant.

Before BARRETT, McKAY and LOGAN, Circuit Judges.

BARRETT, Circuit Judge.

Lease Lights, Inc., Knight Lights Company, Inc., Protective Lighting, Inc., and Jack R. Seay, d/b/a Seay Electric Company (appellants), appeal from an order granting Public Service Company of Oklahoma (PSO) a directed verdict.

Appellants are engaged in the business of installing, leasing, servicing, and maintaining commercial and industrial outdoor lighting in Oklahoma. PSO is an electric public utility company regulated by the Oklahoma

Corporate Commission. Appellants initiated this action against PSO for alleged violation of Section 2 of the Sherman Act as well as Sections 4 and 16 of the Clayton Act (15 U.S.C.A. § 2 and § 15). Appellants sought a total of $8,500,000 in actual damages to be trebled.

Within their complaint, appellants alleged that PSO had a virtual monopoly in the supply of electricity within its service area, that PSO had monopolized and was attempting to monopolize the outdoor lighting business for private, commercial, and industrial users within its service area, and that PSO's actions had occurred in and had an effect upon interstate commerce. Appellants specially alleged that PSO had monopolized the outdoor lighting business by: furnishing outdoor lighting below cost; including its outdoor lighting business in the public utility business; refusing to afford appellants the same service it furnished to its other customers; utilizing its public utility status unlawfully to install, service and maintain outdoor lighting on private property; refusing to allow appellants to install their lights on its poles; and by refusing to connect and delaying the connection of electrical current to appellants' lights for unreasonable periods of time.

Within its original answer, PSO admitted that the acts complained of occurred in and had an effect upon interstate commerce. Thereafter, PSO filed an amended answer in which it specifically denied that the acts complained of occurred in and had an effect upon interstate commerce. PSO further alleged, inter alia, that: as a state regulated entity, conducting state regulated business, it is exempt from the federal antitrust statutes; its rates are established in compliance with the directives of the Oklahoma Corporate Commission; its rates for outdoor lighting have, since May 16, 1975, been profitable; its rates for outdoor lighting have never been below its costs; appellants were never refused any service to which they were entitled; if appellants were in fact improperly denied service, they had a clear and adequate remedy before the Oklahoma Corporate Commission which they failed to pursue; its refusal to allow appellants the right to install their lights on its poles was based on sound business decisions; and, any losses sustained by appellants are attributable to appellants' mismanagement of their respective businesses.

During the course of trial appellants established that their interstate purchases for poles, lights, brackets, wiring, controls, and other components amounted to $110,000 to $185,000 a year. Appellants also presented evidence reflecting that PSO's share of the commercial and industrial lighting business in the Tulsa metropolitan area had grown from 24.6% in 1969 to 63.2% in 1981 while appellants' market share decreased from 69.27% to 33.9% during the same period.

At the conclusion of appellants' case, and prior to presenting any evidence, PSO moved for a directed verdict. PSO alleged that its outdoor lighting business as a public utility was regulated by the State of Oklahoma and, accordingly, was immune to federal antitrust laws; further, that appellants had failed to establish that interstate commerce had been substantially and adversely affected.

Within its order granting PSO's motion for a directed verdict the district court found/concluded:

The Plaintiffs herein contend that the business activity in question is the supplying of outdoor lighting to certain types of customers within the service area served by Defendant. It is not the rental of lights, poles and fixtures, but the rental of illumination. There is no dispute that the Defendant's service area is wholly within the State of Oklahoma. The Court, therefore, must conclude that because the business in question, as defined by the Plaintiffs, is wholly local in nature, the Plaintiffs' burden is to produce evidence which, when viewed in the light most favorable to Plaintiffs, shows that the Defendant's activity has an effect on some other appreciable activity demonstrably in interstate commerce.

In *McLain* [444 U.S. 232, 100 S.Ct. 502, 62 L.Ed.2d 441], *supra,* the Court stated that the effect upon interstate commerce necessary to establish jurisdiction, must, "as a matter of practical economics ... have a not insubstantial effect on the interstate commerce involved." 100 S.Ct. at 511.

Plaintiffs' evidence on this crucial point shows that some of their customers were involved in interstate commerce (a trucking company, for example), and that substantially all of the components used in the business (lights and poles) were manufactured outside of the State of Oklahoma. There is simply no evidence that the interstate business of Plaintiffs' customers was affected in anyway by any activity of the Defendant; nor is there any evidence that the commerce between the states in lights, poles, and fixtures was adversely affected by any activity of the Defendant. The Plaintiffs' evidence actually shows that this business was increasing steadily during the times in question herein.

The Court, upon its review of the Plaintiffs' evidence, can come to no conclusion other than that Plaintiffs have failed to produce any evidence showing that interstate commerce was adversely affected in any way by the Defendant's activities.

R., Vol. I at pp. 62–63.

The district court also found that appellants had presented sufficient evidence to establish the claimed relevant market; appellants' evidence to establish that PSO possessed monopoly power in any relevant market was sufficient, although perilously close to being a "mere scintilla"; appellants failed to show any causal connections between PSO's activities and the damages they were claiming; appellants failed to present evidence by which the impact of PSO's allegedly unlawful acts could be separated from lawful competition, appellants' own business decisions, actions taken by customers, and general increases in costs and labor over a period of years; appellants' evidence on damages, although extremely weak, was adequate for submission "to the jury, had the other requirements [jurisdiction] been met"; and that in view of the lack of evidence relative to the extent of the Oklahoma Corporate Commission's regulation of PSO's business, a ruling on PSO's assertion that its regulated status caused it to be immune from the application of the Sherman Act would be premature.

On appeal appellants contend, *inter alia,* the district court erred in: (1) concluding that the evidence would not support a jury finding of causation or fact of damage; (2) finding that there was an absence of evidence to show that the interstate commerce jurisdictional requirements were satisfied; and (3) directing a verdict in violation of their right to a jury trial.

I.

Appellants contend that the trial court erred in finding that there was an absence of evidence to show that the interstate commerce jurisdictional requirements were satisfied. Appellants argue that they established the interstate commerce jurisdictional requirements by showing that: the lights and lighting components installed in the market area were purchased in states outside of Oklahoma; a portion of PSO's business occurs in interstate commerce; and that some of their lighting customers were engaged in businesses that operate in interstate commerce. PSO does not dispute these contentions.

PSO argues that such a showing does not establish jurisdiction when, as here, it is undisputed that: the business of outdoor lighting is wholly local in nature; the number of lights in the relevant market claimed by appellants has increased each year; there was no evidence that the movement in interstate commerce of outdoor lighting components has been reduced or adversely affected; and that appellants' evidence shows that the relevant market growth rate for several of the lights supplied by appel-

lants and PSO was twice as fast following PSO's alleged anticompetitive actions as it was in the six immediately preceding years. As such, PSO contends that the district court did not err in finding that appellants had failed to establish jurisdiction, having "failed to produce any evidence showing that interstate commerce was adversely affected in any way by the Defendant's activities". We disagree.

■ The jurisdictional element of a Sherman Act violation may be established by a showing of activities "actually *in* interstate commerce" or by other activities which, "while wholly local in nature substantially *affect* interstate commerce." *McLain v. Real Estate Board of New Orleans,* 444 U.S. 232, 241, 100 S.Ct. 502, 508, 62 L.Ed.2d 441 (1980). In *McLain* the Court stated:

> It can no longer be doubted, however, that the jurisdictional requirement of the Sherman Act may be satisfied under either the "in commerce" or the "effect on commerce" theory.... To establish jurisdiction a plaintiff must allege the critical relationship in the pleadings and if these allegations are controverted must proceed to demonstrate by submission of evidence beyond the pleadings either that the defendants' activity is itself in interstate commerce or, *if it is local in nature, that it has an effect on some other appreciable activity demonstrably in interstate commerce. Gulf Oil Corp. v. Copp Paving Co.,* supra, [419 U.S. 186] at 202 [95 S.Ct. 392, 402, 42 L.Ed.2d 378].

> To establish the jurisdictional element of a Sherman Act violation it would be sufficient for petitioners to demonstrate a substantial effect on interstate commerce generated by respondents' brokerage activity. Petitioners need not make the more particularized showing of an effect on interstate commerce caused by the alleged conspiracy to fix commission rates, or by those other aspects of respondents' activity that are alleged to be unlawful.... A violation may still be found in such circumstances because in a

civil action under the Sherman Act, liability may be established by proof of *either* an unlawful purpose or an anticompetitive effect.

\* \* \* \* \* \*

> Nor is jurisdiction defeated in a case relying on anticompetitive effects by plaintiff's failure to quantify the adverse impact of defendant's conduct.... Even where there is an inability to prove that concerted activity has resulted in legally cognizable damages, jurisdiction need not be impaired, though such a failure may confine the available remedies to injunctive relief.

444 U.S. at pp. 242–243, 100 S.Ct. at 509.

■ The determination of whether an activity has a "substantial effect" on interstate commerce cannot be determined with mathematical nicety. In *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975) the Court stated:

> The fact that there was no showing that home buyers were discouraged by the challenged activities does not mean that interstate commerce was not affected. Otherwise, the magnitude of the effect would control, and our cases have shown that, once an effect is shown, no specific magnitude need be proved.

421 U.S. at p. 785, 95 S.Ct. at p. 2012.

■ Nor does a lack of intent to affect interstate commerce or the lack of impact on market price preclude a viable jurisdictional determination. In *Hospital Building Company v. Rex Hospital Trustees,* 425 U.S. 738, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976) the Court held:

> Whether the wholesalers intended their restraint to affect interstate commerce was simply irrelevant to our holding. See also *United States v. McKesson & Robbins,* 351 U.S. 305 [76 S.Ct. 937, 100 L.Ed. 1209] (1956). In the same way, the fact that respondents in the instant case may not have had the purposeful goal of affecting interstate commerce does not

lead us to exempt that conduct from coverage under the Sherman Act.

The Court of Appeals further justified its holding of "no substantial effect" by arguing that "no source of supply or insurance company or lending institution can be expected to go under if Mary Elizabeth doesn't expand, and no market price likely will be affected." 511 F.2d, at 684. While this may be true, it is not of great relevance to the issue of whether the "substantial effect" test is satisfied. An effect can be "substantial" under the Sherman Act even if its impact on interstate commerce falls far short of causing enterprises to fold or affecting market price.

425 U.S. at p. 745, 96 S.Ct. at p. 1853.

In *Mishler v. St. Anthony's Hospital Systems,* 694 F.2d 1225 (10th Cir.1981) we stated:

> A federal court has jurisdiction under the Sherman Act if the plaintiff establishes either that the challenged activity occurs within the flow of interstate commerce or that the activity, although wholly local in nature, substantially affects interstate commerce.

> \*   \*   \*   \*   \*   \*

> Additionally, even at trial Dr. Mishler is not required to show that the flow of interstate commerce is diminished; an unreasonable burden on commerce may exist even though the anticompetitive conduct may increase interstate commerce. *Harold Friedman, Inc. v. Thorofare Markets, Inc.,* 587 F.2d 127, 132 & n. 14 (3d Cir.1978); P. Marcus, *Antitrust Law and Practice* 86 (1980).

694 F.2d at pp. 1227–1228.

██ Applying these standards to the facts herein, we hold that appellants did establish a jurisdictional predicate for PSO's alleged antitrust violations and that the trial court erred in granting PSO's motion for a directed verdict. It was uncontested that the service in question, *i.e.,* the supplying of illumination in and about the Tulsa metropolitan area, albeit admittedly local in nature, had a substantial impact on interstate commerce by the repeated, ongoing interstate purchase of lights and lighting components by both appellants and PSO. Having established a substantial effect on interstate commerce, appellants need not, as determined by the trial court, establish an "adverse effect" on interstate commerce.

We reject PSO's contention that the district court's directed verdict for lack of jurisdiction was in accord with our *Crane v. Intermountain Health Care, Inc.,* 637 F.2d 715 (10th Cir.1980) (en banc). In *Crane,* a pathologist sued Intermountain Health Care, Inc., (Intermountain), alleging that Intermountain and others had acted in concert to restrain the practice of pathology at Cottonwood Hospital and to boycott his services in violation of the Sherman Act. Within *Crane,* as observed by PSO, we stated:

> [E]ven though the defendant's overall business may impact interstate commerce greatly, the challenged activity may in every practical economic sense be unrelated to interstate commerce. A mere allegation that the defendant's general or overall business affects interstate commerce falls short of alleging the required "critical relationship," for it leaves the court—impermissibly, under *McLain, see* 444 U.S. at 242, 100 S.Ct. at 509—to "presume" the nexus between the challenged activity and interstate commerce.

637 F.2d at p. 724.

Although not conceded by PSO, appellants' evidence in this case did more than merely allege that PSO's general or overall business affects interstate commerce. As set forth, *supra,* appellants presented unrebutted evidence that most of the lights and lighting components installed in the relevant market area were shipped into Oklahoma from other states. PSO did not challenge this evidence. It did not present evidence that the lights and lighting components it installed were not received in the course of interstate commerce. Under such circumstances, we need not "presume the nexus" between the challenged activity

(PSO's outdoor lighting business) and interstate commerce (interstate shipment of lights and lighting components).

Contrary to PSO's contention, appellants' evidence was in keeping with *Crane.* We there held, *citing to McLain, supra:*

> By stating that plaintiff "need not make the more particularized showing of an effect on interstate commerce caused by the conspiracy ... or other aspects of respondents' activity that are alleged to be unlawful," the Court [*McLain*] was only confirming the principle set forth in *Hospital Building, Burke* [389 U.S. 320, 88 S.Ct. 443, 19 L.Ed.2d 554], and *Goldfarb* that for jurisdictional purposes a plaintiff need not "make the ... particularized showing." 444 U.S. at 242, 100 S.Ct. at 509. In other words, an elaborate analysis of interstate impact is not necessary at the jurisdictional stage, *only an allegation showing a logical connection as a matter of practical economics between the unlawful conduct and interstate commerce.*

637 F.2d at p. 723. [Emphasis supplied].

■ We are not inclined to accept PSO's contention that the substantial reduction in appellants' share of the market was due to their own mismanagement, which, if accepted, would effectively relegate appellants' action to a private one, beyond the protective umbrella of the antitrust laws. In *Mishler v. St. Anthony's Hospital Systems, supra,* we stated:

> Additionally, we cannot say from the pleadings that this case involves a mere private wrong in which revenues were diverted from one set of doctors to another, and thus fails to demonstrate the requisite harm to the public. We assume that doctors do not all deliver identical services for identical fees. Restraints of trade and monopolization inherently involve injury to the public and competition. *Almeda Mall, Inc. v. Houston Lighting & Power Co.,* 615 F.2d 343, 351

(5th Cir.), *cert. denied,* 449 U.S. 870, 101 S.Ct. 208, 66 L.Ed.2d 90 (1980).

694 F.2d at p. 1228.

## II.

In view of our determination that the district court erred in finding lack of subject matter jurisdiction, we decline to address appellants' remaining allegations of error.

REVERSED AND REMANDED.