STERLING BEEF CO., a Colorado corporation, Energy Co-Gen, Inc., a Colorado corporation, Plaintiffs-Appellants,

v.

The CITY OF FORT MORGAN, a Colorado municipal corporation, Defendant-Appellee.

Independent Petroleum Association of Mountain States (IPAMS), Amicus Curiae,

Colorado Association of Municipal Utilities, Amicus Curiae,

Colorado Municipal League, Amicus Curiae.

No. 85–2106.

United States Court of Appeals, Tenth Circuit.

Feb. 2, 1987.

Michael W. Lillie of Hughes & Dorsey (Richard L. Thorgren, with him on brief), Denver, Colo., for plaintiffs-appellants.

David L. Roberts, Fort Morgan, Colo., for defendant-appellee.

Kenneth A. Wonstolen, Denver, Colo., filed a brief on behalf of amicus curiae Independent Petroleum Ass'n of Mountain States.

Gregory L. Johnson and James J. DuBois of Horn, Anderson & Johnson, Colorado Springs, Colo., filed a brief on behalf of amicus curiae Colorado Ass'n of Municipal Utilities.

Gerald E. Dahl and Tami A. Tanoue, Denver, Colo., filed a brief on behalf of amicus curiae Colorado Municipal League.

Before BARRETT, SETH and TACHA, Circuit Judges.

SETH, Circuit Judge.

This is an appeal from a summary judgment in favor of plaintiff-appellee, City of Fort Morgan, Colorado, in an antitrust case brought under the Sherman Act, 15 U.S.C. § 1, *et seq.*, to enjoin Fort Morgan from enforcing a municipal ordinance which forbids the construction, operation, maintenance and use of natural gas pipelines to provide any user or consumer within the city with non-municipal natural gas without a franchise or permit. Defendants-appellants, Sterling Beef Company and Energy Co-Gen, Inc., contend that the district court erred in applying the state action exemption from federal antitrust laws to dismiss their antitrust claim against the Fort Morgan ordinance. We hold that the state action exemption shields the ordinance from federal antitrust scrutiny and affirm the district court's grant of summary judgment.

The facts relevant to this appeal are as follows. The City of Fort Morgan runs a utility which is the exclusive supplier of natural gas to Fort Morgan commercial and domestic users. Sterling Beef Company operates a meat processing plant within Fort Morgan's city limits. Its natural gas

needs comprise 18 to 37 percent of the city-wide market for natural gas. Sterling Beef consumes more natural gas than any other customer of the city's utility.

In an effort to reduce its operating costs, Sterling Beef sought alternative sources of energy for its processing plant. To that end the company entered into a contract with Energy Co-Gen under which Energy Co-Gen would supply natural gas to Sterling Beef at a price substantially lower than that charged by Fort Morgan. The parties to the contract agreed that Energy Co-Gen would construct a pipeline from its natural gas wells located outside the city limits, to a point adjacent to the processing plant but outside the city limits. They further agreed that Sterling Beef would install a pipeline on its property to connect with the Energy Co-Gen pipeline. Under the contract, Sterling Beef would take title to the natural gas outside of Fort Morgan.

After construction on the pipeline was underway, Fort Morgan informed Energy Co-Gen and Sterling Beef that the city would not permit the pipeline's construction on Sterling Beef's property. The city then passed Ordinance 662 which makes it unlawful for any person without a permit or franchise from the city:

"(a) to erect, construct, operate or maintain or use any natural gas pipeline, plant or system or gasworks ... within the city in order to sell or distribute or provide non-municipal natural gas ... to any user or consumer within the city; or,

. . . .

"(c) to interconnect any building, structure or facility of any kind to any natural gas pipeline or system ... or system other than to the natural gas or electrical system of the City of Fort Morgan."

Sterling Beef and Energy Co-Gen sued Fort Morgan in the United States District Court for the District of Colorado seeking injunctive relief from enforcement of the ordinance. The gravamen of plaintiffs' complaint was that the ordinance enabled the city to create a monopoly in the provi-

sion of natural gas in violation of the Sherman Act, 15 U.S.C. § 1, *et seq.* The district court denied the plaintiffs' motion for a preliminary injunction. The plaintiffs then moved for summary judgment requesting a permanent injunction. Fort Morgan also moved for summary judgment, asserting that the ordinance was shielded from federal antitrust claims under the state action exemption.

The district court granted Fort Morgan's summary judgment motion and denied the plaintiffs', finding that Colo.Rev.Stat. § 31–15–707(1)(a)(I), which grants municipalities the power to acquire gas distribution systems, expresses a state policy to displace competition with regulation in the market for the provision for natural gas and that therefore the state action exemption applies. The district court also found an expression of a state policy to displace competition in § 31–15–707(1)(a)(III), which grants municipalities which have elected to purchase utility works the right to an arbitration of the purchase price.

Sterling Beef and Energy Co-Gen appeal from the grant of summary judgment.

The state action exemption originated in *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315. In *Parker*, the Supreme Court upheld a state marketing program which fixed the prices of raisins against a Sherman Act challenge, explaining that the act "gives no hint that it was intended to restrain state action or official action directed by a state." 317 U.S. at 351, 63 S.Ct. at 313. The Court refused to completely extend the *Parker* exemption to municipalities in *City of Lafayette v. Louisiana Power & Light Co.*, 435 U.S. 389, 98 S.Ct. 1123, 55 L.Ed.2d 364, which concerned the contention of several Louisiana cities that the state action exemption rendered the federal antitrust laws inapplicable to them. The *City of Lafayette* Court cautioned that all municipalities are not automatically exempt from antitrust restraints simply by virtue of their status because, unlike states, they are not sovereign. 435 U.S. at 408, 412, 98 S.Ct. at 1134, 1136. The Court concluded that "the *Parker* doc-

trine exempts only anticompetitive conduct engaged in as an act of government by the State as sovereign, or by its subdivisions, pursuant to state policy to displace competition with regulation or monopoly public service." 435 U.S. at 413, 98 S.Ct. at 1137. The Court indicated that a municipality seeking to prove the existence of a state policy to displace competition need not "point to a specific, detailed legislative authorization," 435 U.S. at 415, 98 S.Ct. at 1138, but must show that it acted in accordance with a "clearly articulated and affirmatively expressed ... state policy," 435 U.S. at 410, 98 S.Ct. at 1135, in order to prevail on a *Parker* defense.

In determining whether a Boulder, Colorado ordinance imposing a moratorium on a cable television company's expansion constituted municipal action in furtherance of a clearly articulated and affirmatively expressed state policy to displace competition, the Supreme Court in *Community Communications Co., Inc. v. City of Boulder*, 455 U.S. 40, 55, 102 S.Ct. 835, 842, 70 L.Ed.2d 810, stressed that the clear articulation and affirmative expression requirement is not met by state neutrality toward the challenged municipal action. To the Court, Colorado's constitutional Home Rule Amendment's guarantee of local autonomy was too general to constitute an affirmative state authorization of anticompetitive practices in the cable television market. 455 U.S. at 55, 102 S.Ct. at 842. The Court did not accept the argument that under Colorado's constitution the cities were the *equivalent* of state government as to certain functions and no specific reference to cable television need be made by state government.

The Supreme Court further refined the "clear articulation" test in *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 105 S.Ct. 1713, 85 L.Ed.2d 24. Faced with the claim of unincorporated townships that a neighboring city was monopolizing sewage treatment services by requiring land owners in unincorporated areas to have access to sewage treatment only if a majority of such owners approved a referendum for annexation to the city, the court examined several pertinent Wisconsin statutes. The statutes grant authority to cities to construct, alter and repair sewage systems, empower cities that operate public utilities to determine the areas to be served, and allow the State Department of Natural Resources to require a city's sewage system to be constructed so that unincorporated areas may connect to the system provided they do not object to annexation.

The Court dismissed the towns' argument that a state legislature could only pass the clear articulation test by expressly declaring that municipalities would be engaging in anticompetitive action. 471 U.S. at 42, 105 S.Ct. at 1718. The Court also rejected the towns' contention that the clear articulation test mandates state compulsion of municipal anticompetitive activity, 471 U.S. at 45–46, 105 S.Ct. at 1719–1720, and refused to impose a requirement of active state supervision. 471 U.S. at 47, 105 S.Ct. at 1720. The court distinguished the Home Rule Amendment, which was found insufficiently specific to insulate a Boulder ordinance from the antitrust laws in *City of Boulder*, from the Wisconsin statutes by noting that the Amendment "allocated only the most general authority to municipalities." 471 U.S. at 43, 105 S.Ct. at 1719. The Court concluded that the Wisconsin statutes "clearly contemplate that a city may engage in anticompetitive conduct," 471 U.S. at 42, 105 S.Ct. at 1718, and accordingly, held that the city had demonstrated that its anticompetitive activity constituted state action protected under the *Parker* doctrine.

In Colo.Rev.Stat. § 31–15–707(1)(a)(I), the State of Colorado granted municipalities the power:

> "[t]o acquire ... gasworks, and gas distribution systems for the distribution of gas of any kind ... or to authorize the erection, ownership, operation, and maintenance of such works and systems by others."

Section 31–15–707 authorizes Fort Morgan to own and operate the gas distribution in place and does not prescribe the number of

systems. This section with the related powers of the city provided by the state constitution and by statute on this same subject combine to detail all the powers necessary to permit the city to attain a monopolistic position as to gas distribution. Again, as in *Town of Hallie* the anticompetitive impact is the obvious result of the state scheme. The city has apparently designated the area it will serve as the area within the city limits. There is nothing in its authority which would prevent a designation of only particular areas in the city to be served by the city system.

True, § 31–15–707(1)(a)(I) does not specifically authorize a municipality to pass an ordinance like Fort Morgan's. Yet, as *Town of Hallie* emphasized, Colorado did not need to state explicitly that it intended for city acquisition of gas distribution systems to have anticompetitive effects in order to clearly evince its policy to displace competition with regulation. 471 U.S. at 42, 105 S.Ct. at 1718. Nor was Colorado required to have closely supervised or compelled the acquisition of gas distribution systems. 471 U.S. at 45–47, 105 S.Ct. at 1719–1721. Fort Morgan's ordinance is a foreseeable consequence of the municipality's power over natural gas distribution. Since § 31–15–707(1)(a)(I) articulates a state policy to replace competition with control of the market, the *Parker* exemption applies to the Fort Morgan ordinance.

Appellants contend that *Public Utilities Commission v. Colorado Interstate Gas Co.*, 142 Colo. 361, 351 P.2d 241 demonstrates that Colorado does not have a clearly articulated policy to displace competition with regulation. To the appellants, *Colorado Interstate Gas Co.* stands for the proposition that a private utility is not barred from competing against a public utility in an area certified by the Colorado Public Utilities Commission. Appellants maintain that the *Colorado Interstate Gas Co.* case means that Fort Morgan, as the operator of a public utility, may not block Sterling Beef's private, competing scheme. Appellants construe that case too broadly. The case concerned whether a natural gas company which made certain direct sales to several individual customers was a public

utility subject to the Colorado Public Utilities Commission's jurisdiction and therefore required to apply for a certificate of public convenience and necessity. 351 P.2d at 245, 250. *Colorado Interstate Gas Co.* does not help answer the question of whether a municipality may engage in anticompetitive activity protected by the *Parker* exemption.

Appellants also assert that Sterling Beef's single pipeline does not qualify as a gas distribution system within the meaning of § 31–15–707(1)(a)(I) and thus could not be blocked by the city even if § 31–15–707(1)(a)(I) enables a municipality to prevent the operation of a gas distribution system. The Colorado courts have never defined "gas distribution system." However, if Sterling Beef's proposed pipeline is not a gas distribution system, it is hard to imagine what would be. Energy Co-Gen plans to transport natural gas from its wellhead in a pipeline which will connect up with Sterling Beef's pipeline and meat processing plant. The fact that Sterling Beef does not plan to market the natural gas it receives in its pipeline is irrelevant. Sterling Beef intends its pipeline to supplant its reliance on Fort Morgan's gas distribution system. Since Sterling Beef consumes more Fort Morgan gas than any other Fort Morgan gas user, the proposed pipeline would replace a large portion of the existing gas distribution system. The fact that Sterling Beef intends to take title of the gas in its pipeline outside city limits is equally irrelevant. Sterling Beef's ownership interest in the gas does not obscure the company's proposed organized transportation of natural gas from a supplier's wellhead to a plant and the large volume of gas which will be consumed through the arrangement. The organized transportation arrangement and the high volume of gas consumption point to the creation of a gas distribution system.

The City of Fort Morgan offers additional Colorado statutes and constitutional provisions as support for its contention that the state action exemption protects its ordinance. These, as mentioned above, round out the basic authority in Colo.Rev.Stat. § 31–15–707 to provide the anticompetitive

scheme. These include: Colo. Const. art. XX, §§ 1, 4; Colo.Rev.Stat. § 31–15–707(1)(a)(II), (1)(e); and Colo.Rev.Stat. § 31–32–101. Article XX, § 1, allows home rule cities such as Fort Morgan to condemn or purchase outright public utilities. Article XX, § 4, provides that no franchise relating to any public place of a municipality shall be granted without a vote of the qualified taxpaying electorate at an election held at the expense of the franchise applicant. Franchises for utility works or systems are authorized, extended or renewed by municipalities on the condition that the municipalities may condemn or purchase such works or systems. Colo. Rev.Stat. § 31–15–707(1)(a)(II). Municipalities may condemn as much private property as is necessary for the construction and operation of utilities and may condemn any existing utility works under Colo.Rev.Stat. § 31–15–707(1)(e). Colo.Rev.Stat. § 31–32–101 states that no franchise or license to construct or operate a public utility shall be granted without an ordinance that is published and approved by the city's governing body according to prescribed procedures.

For the foregoing reasons we affirm the district court's order holding that the City of Fort Morgan's Ordinance 662 is shielded from antitrust attack under the state action exemption.

IT IS SO ORDERED.