**J.R. RUSSELL d/b/a Russell Properties, Plaintiff,**

v.

**The CITY OF KANSAS CITY, KANSAS, et al., Defendant.**

Civ. A. No. 86–2132.

United States District Court. D. Kansas.

Aug. 3, 1988.

J.R. Russell, Kansas City, Kan., pro se.
John Fields, Kansas City, Kan., for plaintiff.

Michael P. Howe, N. Cason Boudreau, Kansas City, Kan., for defendant.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

This action arises from a local zoning dispute in Kansas City, Kansas. On three separate occasions, plaintiff submitted zoning proposals to the city, seeking to rezone his residential property for office and professional use. Defendant city, through its city councilmen and planning and zoning staff, denied plaintiff's zoning petitions. Defendant's denials of plaintiff's zoning petitions were upheld by the Wyandotte County Court.[1] Plaintiff claims that defendant's zoning decisions and its redevelopment plans for downtown Kansas City, Kansas violate the Sherman Antitrust Act.[2] Additionally, plaintiff claims that defendant's commercial operation of Memorial Hall violates the Civil Rights Act. According to plaintiff, defendant's actions have resulted in plaintiff's loss of business income, a reduction in the development value of his property, and lost profits.

This matter is before the court on plaintiff's motion to enforce a settlement agreement, defendant city's motion to dismiss plaintiff's antitrust claim for lack of subject matter jurisdiction, and defendant's motion for summary judgment. The court has determined that oral argument would not be of material assistance in the resolution of this matter. D.Kan.Rule 206(d). For the reasons discussed below, plaintiff's motion will be denied, defendant's motion to dismiss will be denied, and defendant's motion for summary judgment will be granted.

1. *Russell v. City of Kansas City,* No. 66075–B (Wyandotte County District Court, Nov. 24, 1980); *Russell v. City of Kansas City,* No. 82C–1304 (Wyandotte County District Court, Jan. 25, 1983); *Russell v. City of Kansas City,* No. 85C–0709 (Wyandotte County District Court, May 8, 1986).

2. Although plaintiff's complaint mentions certain provisions of the Clayton Act (15 U.S.C. §§ 13, 15, 26), plaintiff states a claim only un-

### Plaintiff's Motion to Enforce Settlement Agreement

No settlement agreement between the parties exists. At most, a proposed settlement agreement was at one time being negotiated and considered, but for reasons unknown to the court, a final agreement was never consummated. Consequently, the court cannot enforce a nonexistent settlement agreement, nor can it order the parties to continue settlement negotiations which have previously been discontinued. Plaintiff's motion must therefore be denied.

### Defendant City's Motion to Dismiss

[1] Defendant moves the court to dismiss plaintiff's antitrust claim under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. In support of its motion, defendant claims that plaintiff has failed to plead a "nexus" between defendant's alleged illegal conduct and interstate commerce (*i.e.,* that defendant's alleged illegal conduct has a "substantial effect" on interstate commerce), which is a jurisdictional requirement for plaintiff's Sherman Act claim. Plaintiff's complaint does not allege a connection between defendant's zoning decisions and interstate commerce. Nevertheless, plaintiff's response to defendant's motion to dismiss alleges that defendant's zoning decisions have a substantial effect on interstate commerce because the redevelopment spawned by the defendant's zoning decisions is funded by the interstate sale of revenue bonds. The following analysis is therefore based on the assumption that plaintiff would eventually amend his complaint to allege this nexus between defendant's challenged activities and interstate commerce.

"The antitrust laws are concerned primarily with the integrity of interstate mar-

der the Sherman Act. Section 13 (the price discrimination provision) does not apply to this action. Therefore, our discussion of defendant's alleged antitrust violations will be limited to the Sherman Act. The Clayton Act's general provisions regarding treble damages (section 15) and injunctive relief (section 26) apply to the Sherman Act; however, because defendant's motion for summary judgment will be granted, these provisions need not be addressed.

kets." *Construction Aggregate Transport, Inc. v. Florida Rock Industries, Inc.*, 710 F.2d 752, 767 n. 31 (11th Cir.1983). Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, prohibits every contract, combination or conspiracy "in restraint of trade or commerce among the several States...." 15 U.S.C. § 1; *Income Realty Mortgage, Inc. v. Denver Board of Realtors*, 578 F.2d 1326, 1328 (10th Cir.1978). The Sherman Act's jurisdictional reach is thus "keyed directly to effects on interstate markets...." *Gulf Oil Corp. v. Copp Paving Co.*, 419 U.S. 186, 194, 95 S.Ct. 392, 398, 42 L.Ed.2d 378 (1974). As the United States Supreme Court explained in *McLain v. Real Estate Board of New Orleans*, 444 U.S. 232, 100 S.Ct. 502, 62 L.Ed.2d 441 (1979):

> Although the cases demonstrate the breadth of Sherman Act prohibitions, jurisdiction may not be invoked under that statute unless the relevant aspect of interstate commerce is identified; it is not sufficient merely to rely on identification of a relevant local activity and to presume an interrelationship with some unspecified aspect of interstate commerce. To establish jurisdiction a plaintiff must allege the critical relationship in the pleadings and if these allegations are controverted must proceed to demonstrate by submission of evidence beyond the pleadings either that the defendants' activity is itself in interstate commerce, or if it is local in nature, that it has an effect on some other appreciable activity demonstrably in interstate commerce.

*Id.* at 242, 100 S.Ct. at 509. Therefore, "[a]bsent an adequate showing by the plaintiff that the defendants' [alleged] conspiracy will result 'in restraining of trade or commerce among the several States' ..., the plaintiff's claim must be dismissed." *Construction Aggregate*, 710 F.2d at 766. Dismissal should not occur, however, unless plaintiff has had " 'ample opportunity for discovery' " and " 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Crane v. Intermountain Health Care, Inc.*, 637 F.2d 715, 723 (10th Cir.1980) (quoting *Hos-*

*pital Building Co. v. Trustees of Rex Hospital*, 425 U.S. 738, 746, 96 S.Ct. 1848, 1853, 48 L.Ed.2d 338 (1976) and *McLain*, 444 U.S. at 246, 100 S.Ct. at 511).

The parties agree that defendant's zoning activities are local in nature; therefore, plaintiff must establish that defendant's activities have a substantial effect on interstate commerce to meet the jurisdictional requirement of the Sherman Act.

> "[S]ubstantiality of effect ... is to be viewed on a case-by-case, practical economic basis, from the perspective of whether the local activity has a significant impact on competition in commerce and whether the commerce so affected is substantial in volume." ... It is not relevant to the purpose of regulating anticompetitive conduct that the conduct affect the net volume of interstate trade, nor is it necessary to the exercise of congressional power under the Commerce Clause. What is relevant is the presence in interstate commerce of transactions that, as a result of the anticompetitive conduct, are "substantially" different from the transactions that would otherwise have occurred. These may be differences in the overall number or volume of such transactions, but they may also be differences in the terms of the transactions, or the parties thereto.

*Cardio–Medical Associates v. Crozer–Chester Medical Center*, 721 F.2d 68, 72, 74 (3d Cir.1983) (quoting *Harold Friedman, Inc. v. Thorofare Markets, Inc.*, 587 F.2d 127, 132 (3d Cir.1978)). Given this broad definition of "substantial effect on interstate commerce," the court concludes that plaintiff has alleged a nexus between defendant's zoning activities and interstate commerce sufficient to withstand defendant's Rule 12(b)(1) motion.

Although, as defendant points out, plaintiff's complaint does not allege that defendant's interstate sales of revenue bonds constituted an antitrust violation or caused him harm, such allegations are unnecessary. According to the previously discussed case law, plaintiff need only "point to the relevant channels of interstate commerce affected by the defendant's alleg-

edly unlawful conduct." *Crane,* 637 F.2d at 722. In his response to defendant's motion to dismiss, plaintiff alleges that the defendant city has sold in interstate commerce over one billion dollars worth of revenue bonds to finance the redevelopment of downtown Kansas City, Kansas, which redevelopment was made possible by defendant's zoning decisions. Defendant's zoning decisions thus have an arguable, albeit indirect, effect on interstate commerce. *See, e.g., Central Iowa Refuse Systems, Inc. v. Des Moines Metropolitan Area Solid Waste Agency,* 557 F.Supp. 131, 135 (S.D.Iowa 1982), *aff'd,* 715 F.2d 419 (8th Cir.1983), *cert. denied,* 471 U.S. 1003, 105 S.Ct. 1864, 85 L.Ed.2d 158 (1985) (interstate sale of revenue bonds, among other things, meets "effect-on-commerce" jurisdictional requirement). Indeed, the financial viability of the city's downtown redevelopment is undoubtedly linked to the successful interstate sale of revenue bonds. Consequently, plaintiff's allegations establish that defendant's activities have a substantial effect on interstate commerce, and his antitrust claim will not be dismissed for lack of subject matter jurisdiction.[3]

### Defendant's Motion for Summary Judgment

In considering the defendant's motion for summary judgment, the court must examine all the evidence in the light most favorable to the plaintiff. *Barber v. General Elec. Co.,* 648 F.2d 1272, 1276 n. 1 (10th Cir.1981). According to the federal rules, summary judgment is proper only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). Under this rule, the initial burden is on the moving party to show the court "that there is an absence of evidence to support the nonmoving party's case."

*Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The moving party's burden may be met when that party identifies those portions of the record which demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2553.

Once the moving party has met these requirements, the burden shifts to the party resisting the motion. The nonmoving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2553; *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). The party resisting the motion "may not rest upon the mere allegations or denials of his pleadings ..." to avoid summary judgment. *Anderson,* 477 U.S. at 259, 106 S.Ct. at 2515–16, 91 L.Ed. 2d at 212. The mere existence of a scintilla of evidence will not avoid summary judgment; there must be sufficient evidence on which a jury could reasonably find for the nonmoving party. *Id.* at 251, 106 S.Ct. at 2511–12 (quoting *Improvement Company v. Munson,* 81 U.S. (14 Wall.) 442, 448, 20 L.Ed. 867 (1872)).

For the purposes of this motion, the court assumes plaintiff's factual allegations to be true. Nevertheless, a brief factual background is offered to set the stage for the discussion which follows. Beginning in the 1970's, plaintiff purchased parcels of residential property in Block 159 of the Wyandotte Addition in Kansas City, Kansas. Plaintiff currently owns thirteen of the twenty-two parcels in the block. In 1979, 1981 and 1984, plaintiff sought to rezone his property for office and professional use. As stated previously, defendant city, through its city councilmen and planning and zoning staff, denied plaintiff's

---

**3.** Although courts often state that the challenged activities must have a substantial *and* adverse effect on interstate commerce, *see, e.g., Community Builders v. City of Phoenix,* 652 F.2d 823, 828 (9th Cir.1981); *Chatham Condominium Ass'n v. Century Village, Inc.,* 597 F.2d 1002, 1008 (5th Cir.1979) (quoting *Hospital Building Co. v. Trustees of Rex Hospital,* 425 U.S. 738, 743, 96 S.Ct. 1848, 1851–52, 48 L.Ed.2d 338 (1976)); *Feldman v. Jackson Memorial Hospital,* 509 F.Supp. 815, 819 (S.D.Fla.1981), *aff'd,* 752 F.2d 647 (11th Cir.1985), *cert. denied,* 472 U.S. 1029, 105 S.Ct. 3504, 87 L.Ed.2d 635 (1985), the Tenth Circuit has concluded that once a party establishes a substantial effect on interstate commerce, he need not establish an adverse effect. *Lease Lights, Inc. v. Public Service Co. of Oklahoma,* 701 F.2d 794, 799 (10th Cir.1983).

rezoning petitions. When plaintiff challenged these denials, the Wyandotte County Court upheld the defendant's zoning decisions as reasonable. The defendant city has expended large sums of money for redeveloping downtown land for office and professional use, and has made loans to professional developers for the purpose of carrying out an organized redevelopment plan, which plan did not include plaintiff's parcels.

Additionally, the defendant city owns and commercially operates Memorial Hall, which is often used for musical concerts, and which is located on the east side of the block adjacent to the plaintiff's property. By ordinance, defendant city has permitted the sale and consumption of cereal malt beverages in Memorial Hall. In 1979, plaintiff filed an action against defendant city in Wyandotte County Court, making numerous claims regarding the legality and propriety of the commercial operation of Memorial Hall and the sale of cereal malt beverages on the premises. In 1981, the Wyandotte County Court dismissed plaintiff's case with prejudice after the parties reached a settlement.

Plaintiff is before this court, again challenging the defendant city's zoning decisions and its commercial operation of Memorial Hall. Plaintiff brings the current action under the federal antitrust laws and the civil rights laws. For the reasons discussed below, plaintiff's claims under both the antitrust and civil rights laws fail as a matter of law; consequently, defendant city's motion for summary judgment will be granted.

## A. *Antitrust Claim*

■ Defendant city moves the court for summary judgment, claiming that it is immune from Sherman Act liability under the "state action doctrine." *See generally, Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). In *Parker,* the Supreme Court "held that the federal antitrust laws do not prohibit a State 'as sovereign' from imposing certain anticompetitive restraints 'as an act of government.'" *Lafayette v. Louisiana Power & Light Co.,*

435 U.S. 389, 391, 98 S.Ct. 1123, 1125, 55 L.Ed.2d 364 (1977). Although municipalities do not enjoy an automatic exemption under the state action doctrine, *Id.* at 411, 98 S.Ct. at 1136, not all of a municipality's anticompetitive activities are subject to antitrust restraints. *Id.* at 413, 98 S.Ct. at 1136–37. As the Supreme Court explained:

Since "[m]unicipal corporations are instrumentalities of the State for the convenient administration of government within their limits" ... the actions of municipalities may reflect state policy.... [T]herefore ... the *Parker* doctrine exempts only anticompetitive conduct engaged in as an act of government by the State as sovereign, or, by its subdivisions, pursuant to state policy to displace competition with regulation or monopoly public service....

....

While a subordinate governmental unit's claim to *Parker* immunity is not as readily established as the same claim by a state government sued as such, ... an adequate state mandate for anticompetitive activities of cities and other subordinate governmental units exists when it is found "from the authority given a governmental entity to operate in a particular area, that the legislature contemplated the kind of action complained of." The *Parker* doctrine, so understood, preserves to the States their freedom under our dual system of federalism to use their municipalities to administer state regulatory policies free of the inhibitions of the federal antitrust laws without at the same time permitting purely parochial interests to disrupt the Nation's free-market goals.

*Id.* at 413, 415–16, 98 S.Ct. at 1137, 1138 (citations omitted); *see also Community Communications Co. v. Boulder,* 455 U.S. 40, 51, 102 S.Ct. 835, 840–41, 70 L.Ed.2d 810 (1981); *California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.,* 445 U.S. 97, 105, 100 S.Ct. 937, 943, 63 L.Ed.2d 233 (1980); *New Motor Vehicle Board of California v. Orrin W. Fox Co.,* 439 U.S. 96, 109, 99 S.Ct. 403, 411–12, 58 L.Ed.2d 361 (1978). Thus, a city's actions are ex-

empt from antitrust scrutiny if (1) the actions constitute actions of the state in its sovereign capacity or (2) the actions constitute municipal action in furtherance or implementation of a clearly articulated and affirmatively expressed state policy. *See Community Communications*, 455 U.S. at 52, 102 S.Ct. at 841. Clear articulation and affirmative expression of a state policy does not require that a "legislature must expressly state in a statute or its legislative history that the legislature intends for the delegated action to have anticompetitive effects." *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 43, 105 S.Ct. 1713, 1718, 85 L.Ed.2d 24 (1984). Rather, a state policy to displace competition can be inferred if the challenged restraint is a foreseeable consequence of the municipality's engaging in state-authorized activities. *See Sterling Beef Co. v. City of Fort Morgan*, 810 F.2d 961, 964 (10th Cir.1987); *Scott v. City of Sioux City, Iowa*, 736 F.2d 1207, 1211 (8th Cir.1984), *cert. denied*, 471 U.S. 1003, 105 S.Ct. 1864, 85 L.Ed.2d 158 (1985). The requirement of "clear articulation and affirmative expression" is not satisfied, however, "when the State's position is one of mere *neutrality* respecting the municipal actions challenged as anticompetitive." *Pueblo Aircraft Service, Inc. v. City of Pueblo, Colorado*, 679 F.2d 805, 808–09 (10th Cir.1982), *cert. denied*, 459 U.S. 1126, 103 S.Ct. 762, 74 L.Ed.2d 979 (1983).

■ Determining whether defendant city is exempt under the *Parker* state action doctrine requires a two-step analysis. *See, e.g., Scott*, 736 F.2d at 1211. First, the court must determine whether the state legislature authorized the city's challenged activities. Second, the court must decide whether the legislature's authorization contemplated the resulting anticompetitive effects, or whether the challenged activities were a reasonably foreseeable consequence of the authorizations. *See id.* If defendant city's challenged activities were authorized and if their anticompetitive effects were contemplated by the legislature or reasonably foreseeable, the city will be en-

titled to immunity under the state action doctrine.

■ As far as the court can discern from plaintiff's rather inarticulately drafted complaint, he challenges the following activities under the Sherman Act: (1) defendant's denial of plaintiff's zoning petitions; (2) defendant's aiding and assisting developers competing with plaintiff; and (3) defendant's decision to redevelop vacant land the city purchased in the 1970's, a decision which precluded plaintiff from redeveloping his property. Plaintiff claims that the defendant city is using its zoning authority to control and monopolize all urban redevelopment in downtown Kansas City, Kansas. From our review of the record before us, it appears that the defendant's challenged activities are inextricably entwined with the city's plans to systematically redevelop downtown Kansas City, Kansas. Consequently, the legislation controlling defendants' challenged activities is found in the Urban Renewal Law, K.S.A. 17–4742 *et seq.* The court concludes that defendant city's challenged activities were authorized, that its actions further a clearly articulated and affirmatively expressed state policy, and that its actions were a foreseeable consequence of the legislature's authorization.

The legislature authorized the defendant city to use its zoning powers, K.S.A. 17–4744 and 17–4748(h), to use public money, 17–4743, to allow private enterprise an opportunity to take part in the redevelopment, 17–4744, to make and execute contracts, 17–4748(a), and to use "all the powers necessary and convenient to carry out and effectuate the purposes and provisions" of the Urban Renewal Law, 17–4748. The activities plaintiff challenges come within these grants of authority because the defendant city's activities were directed toward the urban renewal of downtown Kansas City, Kansas.

The state legislature granted defendant city the above-described authority to allow the city the ability to implement the state policy clearly articulated in the Urban Renewal Law:

[T]he prevention and elimination of

slums[4] and blight[5] is a matter of state policy and state concern in order that the state and certain cities therein shall not continue to be endangered by areas which are focal centers of disease ... juvenile delinquency ... and ... congestion.... [T]he necessity in the public interest for the provisions herein enacted is hereby declared as a matter of legislative determination.

*Id.* 17–4743 (footnotes added). Although this affirmatively expressed state policy does not expressly state that the legislature *intended* urban renewal to have anticompetitive effects, given the broad authorizations found in the statute, and given the type of powers granted, the legislature undoubtedly contemplated or reasonably foresaw that a city's activities, conducted under the statute's authorizations, could have some anticompetitive effects. *See Scott,* 736 F.2d at 1212–14; *see also Vartan v. Harristown Development Corp.,* 655 F.Supp. 430 (M.D.Pa.1987). In making its decisions concerning Kansas City, Kansas' downtown redevelopment, defendant city was acting in its governmental capacity "as an arm of the state for the public good on behalf of the state rather than itself." *Pueblo Aircraft,* 679 F.2d at 810. The court therefore concludes that defendant city's challenged activities are exempt from antitrust restraints under the state action doctrine.

## B. *Civil Rights Claims*

Plaintiff's complaint attempts to state causes of action under 42 U.S.C. §§ 1983

and 1985(3). Plaintiff claims that the defendant's commercial operation of Memorial Hall (including the sale of alcoholic beverages on the premises), the alleged violation of a city ordinance, and the alleged withdrawal of police protection from the area surrounding Memorial Hall (*i.e.,* plaintiff's property), deny him equal protection and due process rights. As defendant argues, plaintiff has failed to state a cause of action under either section.

■ To state an equal protection claim under § 1983 or a § 1985(3) claim, plaintiff must allege a racial or otherwise class-based discriminatory intent or purpose behind defendant's actions. *Arlington Heights v. Metropolitan Housing Corp.,* 429 U.S. 252, 265, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977); *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971); *LeClair v. Saunders,* 627 F.2d 606, 611 (2d Cir.1980), *cert. denied,* 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981); *Atkins v. Lanning,* 556 F.2d 485, 489 (10th Cir.1977); *McLellan v. Mississippi Power & Light Co.,* 526 F.2d 870, 877 (5th Cir.1976), *vacated in part,* 545 F.2d 919 (5th Cir.1977); *Cotter v. City of Kansas City, Kansas,* No. 83–2287 (D.Kan., *unpublished,* May 16, 1984); *McQuay v. City of Junction City, Kansas,* No. 81–4012 (D.Kan., *unpublished,* May 3, 1983); *Silkwood v. Kerr–McGee Corp.,* 460 F.Supp. 399, 404–05 (W.D.Okla.1978), *aff'd,* 637 F.2d 743 (10th Cir.1980), *cert. denied,* 454 U.S. 833, 102 S.Ct. 132, 70 L.Ed.2d 111 (1981). Because plaintiff made no allega-

---

**4.** A "slum area" is defined as "an area in which there is a predominance of buildings or improvements, whether residential or nonresidential, which by reason of dilapidation, deterioration, age or obsolescence, inadequate provision for ventilation, light, air, sanitation, or open spaces, high density of population and overcrowding, or the existence of conditions which endanger life or property by fire and other causes, or any combination of such factors is conducive to ill health, transmission of disease, infant mortality, juvenile delinquency, or crime, and is detrimental to the public health, safety, morals or welfare." K.S.A. 17–4760(h).

**5.** A "blighted area" is defined as "an area (other than a slum area) which by reason of the presence of a substantial number of slum, deteriorated, or deteriorating structures, predomi-

nance of defective or inadequate street layout, faulty lot layout in relation to size, adequacy, accessibility or usefulness, unsanitary or unsafe conditions, deterioration of site or other improvements, diversity of ownership, tax or special assessment delinquency exceeding the fair value of the land, defective or unusual conditions of title, improper subdivision or obsolete platting, or the existence of conditions which endanger life or property by fire and other causes, or any combination of such factors, substantially impairs or arrests the sound growth of a municipality, retards the provision of housing accommodations or constitutes an economic or social liability and is a menace to the public health, safety, morals, or welfare in its present condition and use...." K.S.A. 17–4760(i).

tions of class-based discrimination, his § 1985(3) claim must fail, as must his § 1983 equal protection claim.

 To state a due process claim under § 1983, plaintiff must prove two elements: first, the plaintiff must prove that the defendant deprived him of a fundamental right; second, he must prove that the defendant acted under color of state law. *Lessman v. McCormick*, 591 F.2d 605, 609 (10th Cir.1979). There is no doubt that plaintiff proved the second element. As to the first element, however, plaintiff does not even allege the deprivation of a fundamental right (*e.g.*, a liberty, property, privacy, or free speech interest); he merely makes a bald allegation that defendant's actions denied him due process, in violation of § 1983. Because the plaintiff cannot sufficiently allege the deprivation of a fundamental right, the defendant city's actions must be upheld if they bear a rational relationship to a legitimate governmental interest. *See generally, Williamson v. Lee Optical, Inc.*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955); *see also, Birth Control Centers, Inc. v. Reizen*, 508 F.Supp. 1366, 1385 (E.D.Mich.1981), *aff'd in part and vacated in part*, 743 F.2d 352 (6th Cir.1984). Plaintiff makes no argument and offers no evidence to refute defendant's contention that all of the acts complained of satisfy the rational basis test. Having failed to meet his burden under the *Celotex* and *Anderson* standards, *supra*, plaintiff's due process claims under § 1983 also must fail.

Essentially, plaintiff has attempted to create federal causes of action out of a local zoning dispute. Therefore, it is not surprising that, when faced with defendant's summary judgment motion, plaintiff was unable to establish the elements essential to his federal claims.

IT IS THEREFORE ORDERED that plaintiff's motion to enforce the settlement agreement is denied.

IT IS FURTHER ORDERED that defendant city's motion to dismiss is denied.

IT IS FURTHER ORDERED that defendant city's motion for summary judgment is granted as to all claims. Defendant city is hereby dismissed from this action.